**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-cv-23753-KMM**

EDWIN GARRISON, *et al.*, on behalf of
themselves and all others similarly situated,

      Plaintiffs,

v.

SAM BANKMAN-FRIED, *et al.*,

      Defendants.

_____/

**DEFENDANT SAM BANKMAN-FRIED'S UNOPPOSED MOTION TO STAY,**
**OR, ALTERNATIVELY, MOTION TO COMPEL ARBITRATION OR TO DISMISS**
**AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

CONFLICT OF POSITION WITH CO-DEFENDANTS ................................................. 1

PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT ...................................... 1

NATURE AND STATE OF PROCEEDINGS............................................................. 2

I.      STATEMENT OF FACTS ............................................................................ 2

      A.    FTX US Terms of Service .......................................................... 2

      B.    FTX Trading Terms of Service..................................................... 5

II.     ARGUMENT ........................................................................................ 6

      A.    The Claims Against Mr. Bankman-Fried Should Be Stayed During the Pendency of Parallel Criminal Proceedings...................................... 6

      B.    Plaintiffs' Claims Against Mr. Bankman-Fried Should Be Compelled to Arbitration or Dismissed  Because They Must Be Brought Individually, Through Arbitration ............................................................... 9

            1.    The Federal Arbitration Act governs the FTX arbitration agreements and mandates their enforcement. ........................... 11

            2.    Dismissal, as opposed to a stay pending resolution at arbitration, is warranted.......................................................................... 12

            3.    The applicable ToS include choice-of-law and choice-of-forum provisions requiring these disputes to be heard elsewhere. ..................... 14

            4.    Plaintiffs consented to FTX's terms of service, which included arbitration agreements and class action waivers. ..................... 15

            5.    The class action waivers are enforceable. ................................. 16

            6.    The FTX arbitration agreements are valid and enforceable..................... 17

            7.    Applying Florida and Eleventh Circuit law would not result in a different outcome for either ToS............................................... 20

III.    CONCLUSION...................................................................................... 20

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)..................................... 21

-i-

Defendant Sam Bankman-Fried files this Unopposed Motion to Stay, or, alternatively, Motion to Compel Arbitration or to Dismiss the Amended Complaint filed on December 16, 2022 (ECF No. 16). Plaintiffs do not oppose Mr. Bankman-Fried's request for a stay, and the "Celebrity Defendants" take no position on the request.

## CONFLICT OF POSITION WITH CO-DEFENDANTS

Due to a clear conflict with other Defendants, Mr. Bankman-Fried files this Motion independently. Mr. Bankman-Fried is not similarly situated to the other FTX Insider Defendants. Defendants Singh, Ellison, and Wang have pleaded guilty in the FTX-related criminal proceedings in New York. Defendant Trabucco has not been criminally charged. And, according to press reports, Defendant Friedberg is apparently cooperating with the government. Consequently, Mr. Bankman-Fried's Fifth Amendment rights are directly implicated by this civil proceeding in ways that the other FTX Insider Defendants' rights are not. Mr. Bankman-Fried is also not similarly situated to the "Celebrity Defendants," who have been sued for different alleged conduct.

## PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

This case should be stayed as to Mr. Bankman-Fried until the conclusion of the criminal action against him in the Southern District of New York (Case No. 22-cr-00673). As indicated above, Plaintiffs do not oppose a stay and the "Celebrity Defendants" take no position on a stay. Further, as explained below, there is significant and evident overlap between the active criminal action in New York and this civil action in Florida, especially with respect to the allegations and claims against Mr. Bankman-Fried. Mr. Bankman-Fried's Fifth Amendment rights would be severely and impermissibly jeopardized if he is forced to defend against the claims in this case.

If there is no stay as to Mr. Bankman-Fried, the claims against him should be compelled to arbitration or dismissed with prejudice under Rules 12(b)(1) and 12(b)(3). Plaintiffs are subject to

FTX US and FTX Trading, Ltd.'s Terms of Service, which contain enforceable arbitration clauses and class action waivers, compelling arbitration or dismissal of Plaintiffs' claims.

## NATURE AND STATE OF PROCEEDINGS

On November 15, 2022, Plaintiffs filed the initial class action Complaint in the matter. ECF No. 1.  On December 16, 2022, Plaintiffs filed the Amended Complaint. ECF No. 16 (Am. Compl.). The core allegations arise out of alleged use of the FTX US and/or FTX Trading cryptocurrency exchanges to purchase FTX yield-bearing accounts ("YBAs").  *See* Am. Compl. at 9–12, ¶ 22.  Plaintiffs allege they signed-up for "the FTX app" and subsequently lost assets held in YBAs on FTX US and/or FTX Trading in 2022. Am. Compl. at 3–4, ¶¶ 5, 6.

The Amended Complaint is silent as to when Plaintiffs registered with FTX US and/or FTX Trading, and also silent as to which Plaintiffs registered with which FTX-related service.  The Amended Complaint is similarly silent as to what assets each Plaintiff held on which platform, and during what time frame. Nonetheless, Plaintiffs allege that due to various actions of Defendants, Plaintiffs and the class have been "robbed" of their assets.  *See* Am. Compl. at 4, ¶ 6.

Count I is brought under the Florida Securities and Investor Protection Act. Count II is a FDUTPA claim.  Count III is for civil conspiracy. And Count IV is for a declaratory judgment. As against the "FTX Insiders," including Mr. Bankman-Fried, there are claims for breach of fiduciary duty (Count IV), negligence (Count V), and conversion (Count VI).

## I.     STATEMENT OF FACTS

### A.     FTX US Terms of Service

In order to use FTX US's services, including creating and using an FTX US account, Plaintiffs would have been required to consent to the FTX US User Agreement (the "FTX US User

Agreement"), contained within FTX US's terms of service ("FTX US ToS").[1] *See* Jeremy D. Mishkin Declaration, Ex. A (FTX US User Agreement).  Although Plaintiffs have not specified the dates they registered for FTX US accounts or held assets via FTX US, the "Terms of Service" were displayed prominently as of May 2022 at the bottom of FTX US's website, under the header "Legal."[2] Clicking on the ToS header, available on every page of the website, redirected users to a User Agreement to which all FTX US users were required to agree in order to use FTX US services.  *See* FTX US User Agreement at 1, ¶ 1.

The FTX US User Agreement contains a class action waiver and an agreement to individually arbitrate all disputes arising out of the ToS or use of FTX US services.  *Id.* at 1, 12. Section 30 of the User Agreement, labeled "Dispute Resolution," mandates that disputes "will be

---

[1] This Court may consider the FTX.US and FTX Trading ToS for the purposes of a motion to dismiss under Rule 12 because Plaintiffs incorporated them by reference in the Amended Complaint. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

[2] On November 11, 2022 and November 14, 2022, FTX Trading Ltd. and 101 affiliated debtors, including FTX US, each filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the District of Delaware.  FTX US's website was subsequently taken down as part of the restructuring and any attempt to access that domain name redirects the user to restructuring.ra.kroll.com.  *See* FTX.us. However, the submitted copy of the ToS is obtained from a download of FTX.us as of May 16, 2022, captured by Wayback Machine. "Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (taking judicial notice of websites as of dates captured by Wayback Machine) (citing *Erickson v. Nebraska Mach. Co.*, 2015 WL 4089849, at *1 n. 1 (N.D. Cal. July 6, 2015) (taking judicial notice of website from Wayback Machine)).

Moreover, a January 6, 2023 internet search on "how to register an FTX US account tos" reflects that prior to the bankruptcy, www.help.ftx.us, required users to "Agree with Our Terms and Service" as part of "Step 1" in creating an account.  *See* Mishkin Decl. Ex. B ("Jan. 6, 2023 Internet Search").  Moreover, the continued use of FTX US's services after any amendment or updates to the ToS constituted acceptance of the revised ToS, including the dispute resolution provision, unless the user rejected any changes to the dispute resolution provision within 30 days of the date the change became effective or the user was notified of the change.  *See* User Agreement at 1, ¶ 2; 13, ¶ 30(g).

resolved solely by binding, individual arbitration and not in a class, representative or consolidated action or proceeding." *Id.* at 12.   Section 30 also sets forth, *inter alia*, the manner in which arbitration is to be conducted, the extremely limited exceptions to mandatory arbitration, and a class action waiver:

> (a)      <u>Mandatory Arbitration of Disputes</u>.  We agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services (collectively, "Disputes") will be resolved solely by binding, individual arbitration and not in a class, representative or consolidated action or proceeding.  You and FTX.US agree that the U.S. Federal Arbitration Act governs the interpretation and enforcement of these Terms, and that you and FTX.US are each waiving the right to a jury or to participate in a class action.  This arbitration provision shall survive termination of these Terms.
>
> …
>
> (f)      <u>Class Action Waiver</u>.  **YOU AND FTX.US AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOURS OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.**  Further, if the parties' dispute is resolved through arbitration, the arbitrator may not consolidate another person's claims with your claims, and may not otherwise preside over any form of a representative or class proceeding.  If this specific provision is found to be unenforceable, then the entirety of this Dispute Resolution section shall be null and void.

*Id.* at 12-13 (original emphasis included). Even if an FTX US user did not read more than the first page of the User Agreement, a portion of that page, also in bolded, capital letters, reads:

> **IMPORTANT NOTICE REGARDING ARBITRATION:   WHEN YOU AGREE TO THESE TERMS YOU ARE AGREEING (WITH LIMITED EXCEPTION) TO RESOLVE ANY DISPUTE BETWEEN YOU AND FTX.US THROUGH BINDING, INDIVIDUAL ARBITRATION RATHER THAN IN COURT.   PLEASE REVIEW CAREFULLY SECTION 30 "DISPUTE RESOLUTION" BELOW FOR DETAILS REGARDING ARBITRATION.**

*Id.* at 1.   Also, directly under this clause, the User Agreement reads, "1.    <u>Agreement to Terms/Privacy Policy</u>.  By using our Services, you agree to be bound by these Terms.  If you don't agree to be bound by these Terms, do not use the Services."  *Id.* at 1, ¶ 1.

The FTX US User Agreement's explicit class action waiver and mandatory individual arbitration clause are subject to limited exceptions for qualifying disputes in small claims court and equitable claims grounded solely in infringement or misappropriation of intellectual property rights. *Id.* at 12, ¶ 30(b). None of those exceptions apply here.

By registering accounts and using FTX US services, Plaintiffs and any putative class members consented to FTX US's ToS, including the arbitration agreement and class action waiver. Sections 29 and 30(a) of the User Agreement dictate that any action related to FTX US will be governed by the FAA. *Id.* at 12, ¶¶ 29, 30(a).[3] Further, the ToS provides that any arbitration shall be conducted by AAA using its Consumer Arbitration Rules. *Id.* at 12, ¶ 30(c).

Plaintiffs also admit, without specifying as to which FTX entity, that FTX provided Plaintiffs with terms of service. *See* Am. Compl. at 17–18, ¶ 61.

**B.    <u>FTX Trading Terms of Service</u>**

The Amended Complaint also alleges, without specification, that at least one of the named Plaintiffs deposited or held assets using FTX Trading Ltd., doing business as FTX Trading." *See* Am. Compl. at 1. Similar to FTX US, in order to use FTX Trading's services, Plaintiffs would have been subject to the Terms of Service for FTX Trading Ltd ("FTX Trading ToS").[4] *See* Mishkin Decl. Ex. C ("FTX Trading User Agreement").

 The FTX Trading ToS, at times relevant to the Amended Complaint, included a mandatory arbitration clause and class action waiver. *Id*. at 27. The FTX Trading ToS expressly

---

[3] The User Agreement also contains choice of law and venue clauses, specifying that for all disputes not covered by the arbitration provision, the laws of the State of California govern and the courts located in Alameda County, California, shall hear any such action. *See* FTX US User Agreement at 12, ¶ 29.

[4] *See supra* n. 1, n. 2. For the reasons explained previously, the FTX Trading ToS are currently unavailable on FTX's former website.

provided that "**any Dispute shall be referred to and finally determined by arbitration** administered by the Singapore International Arbitration Centre ("SIAC") in accordance with the Arbitration Rules of the SIAC ("SIAC Rules") for the time being in force."  It also provided that "**(A) any Dispute shall be referred to arbitration in accordance with this Clause 38.12 on an individual basis only and not as a claimant or class member in a purported class or representative action;** (B) combining or consolidating individual arbitrations into a single arbitration is not permitted without the consent of all parties. *Id*. (emphasis added).

As per the Amended Complaint, Plaintiffs expressly rely on the FTX Trading ToS and firmly ground certain claims in them, effectively conceding that other portions of the ToS should be enforceable.  *See* Am. Compl. at 17–18, ¶ 61.

## II.    <u>ARGUMENT</u>

The claims against Mr. Bankman-Fried should be stayed during the pendency of his criminal case in order to preserve his Fifth Amendment rights. If the Court does not grant a stay, the claims against Mr. Bankman-Fried should be compelled to arbitration or dismissed for lack of subject-matter jurisdiction and improper venue, based on Plaintiffs' consent to the arbitration agreements and the class action waivers in FTX US and FTX Trading's Terms of Service. At a minimum, the Court should stay these claims pending resolution at arbitration.

### A.    **The Claims Against Mr. Bankman-Fried Should Be Stayed During the <u>Pendency of Parallel Criminal Proceedings</u>**

The claims against Mr. Bankman-Fried should be stayed during the pendency of the criminal case against him in the Southern District of New York (Case No. 22-cr-00673-LAK). The charges in that case arise out of the same core facts as this civil case. Mr. Bankman-Fried's Fifth Amendment rights are thus implicated by nearly every aspect of this civil proceeding.

Therefore, if ever a stay pending the resolution of parallel criminal proceedings was both warranted and necessary to preserve a criminal defendant's constitutional rights, this is that case.

A court may exercise its discretion to stay civil proceedings in light of an ongoing criminal investigation if the interests of justice require it. *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970). While the "[t]he Eleventh Circuit has articulated a narrow set of circumstances which require that a stay be granted[,]" those circumstances warranting a stay are indisputably present here. *Gonzalez v. Israel*, No. 15-cv-60060, 2015 WL 4164772, at *2 (S.D. Fla. July 9, 2015) (citing *Global Aerospace, Inc. v. Platinum Jet Mgmt., LLC,* 2009 WL 2589116, at *1 (S.D. Fla. Aug.19, 2009)).  In the Eleventh Circuit, courts "must consider whether a defendant in both a civil and criminal matter is forced to choose between waiving his privilege against self-incrimination or losing the civil case in summary proceedings." *Id*.  Generally, "the strongest case for a stay is when a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Judd v. Weinstein*, No. CV-185724, 2019 WL 2879875, at *2 (C.D. Cal. Apr. 2, 2019) (citations and internal quotations omitted). In determining whether to grant a stay, courts in the Eleventh Circuit principally consider the following factors:

> [(1)] the degree and severity of overlap between the civil and criminal proceedings; [(2)] whether the criminal charges are hypothetical or, by contrast, whether an indictment or its equivalent has been issued; [(3)] and the specificity of the invocation of the Fifth Amendment privilege relative to the civil proceeding.

*Gonzalez*, 2015 WL 4164772, at *3 (compiling Eleventh Circuit cases discussing relevant factors). Here, each of the three factors weighs in favor of staying this civil proceeding. [5]

---

[5] Courts will also consider other factors, including the private and public interests, the degree of overlap between the cases, and the case status. *Lay v. Hixon*, 2009 WL 1357384, at *3 (S.D. Ala. May 12, 2009) (internal quotations and citations omitted).  These factors also militate in favor of a stay.

*First*, the level of factual and legal overlap between this case and the criminal proceeding in New York cannot be overstated. Indeed, the alleged facts giving rise to the criminal charges against Mr. Bankman-Fried track almost identically to those alleged here. Therefore, because "the similarity of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay"—*Love v. City of Lanett,* 2009 WL 2525371, at *2 (M.D. Ala. Aug.17, 2009) (citation omitted); *Doe 1 v. City of Demopolis,* 2009 WL 2059311, at *3 (S.D. Ala. July 10, 2009)—this factor strongly favors a stay.

*Second*, the status of the criminal proceeding also weighs in favor of a stay. The criminal proceeding against Mr. Bankman-Fried is not hypothetical, as the indictment and subsequent superseding indictments charging Mr. Bankman-Fried have been formally filed in New York. The criminal case is also in active discovery, trial is scheduled to begin on October 2, 2023, and the Court has stated on the record that it is unlikely to alter that schedule. *See, e.g.,* Jan. 3, 2023, Minute Entry of Arraignment before Hon. Lewis A. Kaplan, *United States v. Bankman-Fried*, No. 22-cr-00673-LAK (S.D.N.Y. Dec. 22, 2022). In addition, three of the defendants in this action—Ellison, Wang, and Singh—have pleaded guilty in the criminal case and are expected to be testifying witnesses against Mr. Bankman-Fried at trial.

*Third*, Mr. Bankman-Fried's Fifth Amendment rights are directly implicated by every aspect of this civil action. "A stay is warranted when a defendant in both a civil and a criminal case, is forced to choose between waiving his privilege against self-incrimination or losing the civil case in [summary proceedings]." *A.B. ex rel. Baez v. Seminole Cnty. Sch. Bd.*, No. 6:05-cv-802, 2005 WL 2614622, at *1 (M.D. Fla. Oct. 14, 2005) (citing *Shell Oil Co. v. Altina Associates, Inc.,* 866 F. Supp. 536, 540 (M.D. Fla. 1994)) (internal citations omitted). Here, Fifth Amendment

-8-

implications would arise at nearly every juncture–in written discovery, during depositions, in responsive pleadings and motion practice, and also at trial. Thus, should this action proceed, Mr. Bankman-Fried will be impermissibly forced to choose between waiving his Fifth Amendment privilege in the criminal proceeding or defending this civil action. This too warrants a stay.

In sum, all of the relevant factors weigh in favor of a stay as to Mr. Bankman-Fried. Courts in this Circuit frequently grant stays, or partial stays, of civil actions during the pendency of parallel criminal proceedings when a defendant's constitutional rights are jeopardized. *See, e.g., Gonzalez*, 2015 WL 4164772, at *4 (compiling cases granting stays of civil actions during pendency of criminal proceedings); *Ventura v. Brosky*, No. 06-cv-22026, 2006 WL 3392207, at *2 (S.D. Fla. Nov. 21, 2006) (staying civil case due to Fifth Amendment concerns); *Doe 1*, 2009 WL 2059311, at *3 (S.D. Ala. July 10, 2009); *Lay v. Hixon*, No. 09-cv-0075-WS-M, 2009 WL 1357384, at *5 (S.D. Ala. May 12, 2009) ("[G]ranting a stay of this action pending resolution of the state-court criminal proceedings is appropriate."). Considering the serious nature of the charges against Mr. Bankman-Fried, coupled with the undeniable overlap in subject matter between the criminal case and this civil matter, the present action should be stayed as to Mr. Bankman-Fried.

**B.**  **Plaintiffs' Claims Against Mr. Bankman-Fried Should Be Compelled to Arbitration or Dismissed Because They Must Be Brought Individually, <u>Through Arbitration</u>**

Plaintiffs' claims against Mr. Bankman-Fried should be compelled to arbitration or dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3) based on the arbitration agreements contained in FTX US and FTX Trading, Ltd.'s Terms of Service.[6]

---

[6] Mr. Bankman-Fried, although not a signatory to both ToS, may enforce the arbitration agreement because, *inter alia*, Plaintiffs' claims are intertwined with the duties and obligations arising from the ToS. "[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–30 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 632 (2009)); *Haasbroek v. Princess Cruise Lines,*

Regardless of whether Plaintiffs utilized FTX US services or FTX Trading services, Plaintiffs agreed to bring any related claims individually, through arbitration, in the agreed venue. In the Eleventh Circuit, "[m]otions to compel arbitration are generally treated as motions to dismiss for lack of subject matter jurisdiction pursuant to *Fed. R. Civ. P. 12(b)(1)*." *Schriever v. Navient Sols., Inc.*, No. 2:14-cv-596, 2014 WL 7273915, at *2 (M.D. Fla. Dec. 19, 2014); *Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 376 F. Supp. 3d 1298, 1304 (S.D. Fla. 2019). "[I]n ruling on a motion to compel arbitration, the Court may consider matters outside of the four corners of the complaint." *Baptist Hosp. of Miami, Inc.,* 376 F. Supp. 3d at 1304 (citations omitted). Notably, in the Amended Complaint, Plaintiffs acknowledge, and argue for the enforceability of, certain FTX ToS. *See* Am. Compl. at 17–18. Further, both arbitration clauses are very broad and clearly encompass Plaintiffs' claims against Mr. Bankman-Fried, and both unambiguously bar any effort to bring claims as a class action. Simply put, the arbitration agreements and class action waivers should be enforced.

---

*Ltd.*, 286 F. Supp. 3d 1352, 1361 (S.D. Fla. 2017) ("[A] nonparty may force arbitration if the relevant state contract law allows him to enforce the agreement to arbitrate.").

Under either Florida or California law, Mr. Bankman-Fried may enforce the agreement. *See Dimattina Holdings, LLC v. Steri-Clean, Inc.*, 195 F. Supp. 3d 1285, 1292 (S.D. Fla. 2016) ("A non-signatory to an arbitration agreement may compel arbitration when the allegations against him are inextricably intertwined with or mirror those against a signatory, or when the allegations are of interdependent and concerted misconduct between a non-signatory and a signatory."); *see also Kramer*, 705 F.3d at 1128–30. Courts in other jurisdictions, when considering defendants holding similar company positions to Mr. Bankman-Fried, have allowed those defendants to enforce company arbitration agreements. *See Frazier v. W. Union Co.*, 377 F. Supp. 3d 1248, 1262–64 (D. Colo. 2019) (emphasizing interdependence of claims against signatory and nonsignatory defendants and that plaintiffs' claims were intertwined with the duties and obligations arising from the terms of service); *Giddings v. Media Lodge, Inc.*, 320 F. Supp. 3d 1064, 1081–82 (D.S.D. 2018); *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798–99 (8th Cir. 2005).

1.      **The Federal Arbitration Act governs the FTX arbitration agreements and mandates their enforcement.**

The FAA governs both ToS.  The FTX US User Agreement explicitly provides that the FAA governs the present arbitration agreement.  *See* FTX US User Agreement at 12, ¶¶ 29, 30(a).  As to the FTX Trading User Agreement, the FAA, through the New York Convention, applies to international arbitration agreements so long as no conflict exists.  *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1284 (11th Cir. 2015); *Bautista v. Star Cruises*, 396 F.3d 1289, 1297 (11th Cir. 2005) (". . . with FAA provisions applying only where they did not conflict.").  "The Federal Arbitration Act ("FAA") governs written arbitration agreements affecting interstate commerce."  *Norde v. Ctr. for Autism & Related Disorders, LLC*, No. 22-cv-00639, 2022 WL 4227274, at *2 (N.D. Cal. Aug. 22, 2022) (citing *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001)).[7]  The FAA dictates that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"[I]n deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  Analyzing both issues leads inexorably to the conclusion that the claims in this lawsuit must be arbitrated.

Here, there are explicit, broad arbitration agreements contained in both User Agreements. *See* FTX US User Agreement at 12-13; FTX Trading User Agreement at 27.  The present dispute concerns Plaintiffs' alleged use of FTX services, and thus is covered by Section 30 of the FTX US

---

[7] As addressed in Section (3), below, Ninth Circuit law governs, in accordance with the FTX US ToS choice-of-law provision.

User Agreement and Section 38.12 of the FTX Trading User Agreement.  *See* FTX US User Agreement at 12, ¶ 30(a) ("any dispute, claim, or controversy arising out of or relating to … the use of the Services … will be resolved solely by binding, individual arbitration …"); FTX Trading User Agreement at 1 ("Section 38.12 (Arbitration) requires all Disputes to be resolved by way of legally binding arbitration on an individual basis only and not as a claimant or class member in a purported class or representative action.").  Further, were Plaintiffs to contest the validity or arbitrability of the arbitration agreements, any such disputes would similarly be covered and thus could only be determined in the arbitration process.  *Id.*; *see also Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 634 (9th Cir. 2021) ("It is well-established that some "gateway" issues pertaining to an arbitration agreement, such as issues of validity and arbitrability, can be delegated to an arbitrator by agreement."). Both gateway conditions are accordingly met.

Since both conditions are met, "the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Norde*, 2022 WL 4227274, at *3 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).  The FAA requires arbitration of these claims.

> **2.**    **Dismissal, as opposed to a stay pending resolution at arbitration, is warranted.**

As all claims against Mr. Bankman-Fried are arbitrable and must be submitted to arbitration, dismissal of these claims is appropriate.  The Ninth Circuit and Eleventh Circuit are in agreement that on its face, the FAA requires federal district courts to stay judicial proceedings and

compel arbitration of claims covered by a written and enforceable arbitration agreement." *Houtchens v. Google LLC*, No. 22-cv-02638, 2022 WL 17736778, at *2 (N.D. Cal. Dec. 16, 2022) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014)); *Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 376 F. Supp. 3d 1298, 1311 (S.D. Fla. 2019) (citing *Lambert v. Austin Indus.*, 544 F.3d 1192, 1195 (11th Cir. 2008)).

However, the Circuits also agree that "courts have discretion to stay or dismiss claims subject to a valid arbitration agreement." *Houtchens*, 2022 WL 17736778, at *8 (citations omitted); *Baptist Hosp. of Miami, Inc.*, 376 F. Supp. 3d at 1311 ("The Eleventh Circuit has also affirmed dismissal on those grounds.") (citing *Caley v. Gulfstream Aerospace Corp.*, 333 F.Supp.2d 1367 (N.D. Ga. 2004), *aff'd*, 428 F.3d 1359 (11th Cir. 2005)). "A trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim…." *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (citations omitted) (affirming dismissal of claims based on agreement to arbitrate); *see also Alvarado v. Pac. Motor Trucking Co.*, No. 14-cv-0504, 2014 WL 3888184, at *7 (C.D. Cal. Aug. 7, 2014), *aff'd*, 672 F. App'x 687 (9th Cir. 2016) ("When a court determines that the entirety of a dispute is subject to arbitration, the court lacks subject matter jurisdiction and dismissal of the complaint is proper")  Here, dismissal is proper because all claims against Mr. Bankman-Fried must be submitted to arbitration.

Courts in the Eleventh and Ninth Circuits also agree that for binding, valid, and enforceable arbitration clauses, federal courts lack subject-matter jurisdiction and dismissal under Rule 12(b)(1) is appropriate. *Villasenor v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, No. 18-cv-06628, 2019 WL 2603316, at *1 (N.D. Cal. June 25, 2019) (noting dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is sufficient to enforce arbitration provision); *Baptist Hosp. of Miami, Inc.*, 376 F. Supp. 3d at 1304.

**3.      The applicable ToS include choice-of-law and choice-of-forum provisions requiring these disputes to be heard elsewhere.**

The FTX US ToS arbitration clause contains California choice-of-law and choice-of-forum provisions:

> Governing Law and Forum Choice. **These Terms and any action related thereto will be governed by** the Federal Arbitration Act, federal arbitration law, and the **laws of the State of California** without regard to its conflict of laws provisions . . . the exclusive jurisdiction for all Disputes (defined below) that you and FTX.US are not required to arbitrate **will be the state and federal courts located in Alameda County in California**, and you and FTX.US each waive any objection to jurisdiction and venue in such courts.

*See* FTX US User Agreement (emphasis added).  Under the FAA, which governs the FTX US ToS, parties are free to structure their arbitration agreements as they see fit, including choice-of-law provisions. *Am. Exp. Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997). The parties here decided that that these claims should be heard in California. And even if Plaintiffs dispute the enforceability of the arbitration agreement or class action waiver, those disputes are also properly heard and decided by the arbitrator, not this Court.

The FTX Trading ToS also contains an English choice-of-law and Singapore choice-of-forum clause. Specifically, any dispute shall be referred to and determined "by arbitration administered by the Singapore International Arbitration Centre ("SIAC") in accordance with the Arbitration Rules of the SIAC ("SIAC Rules")[,]" and the seat of the arbitration shall be Singapore. *Id.* Based on this clear language, the claims cannot be adjudicated here. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 66 (2013) ("In all but the most unusual cases" "the interest of justice is served by holding parties to their bargain" regarding forum-selections clauses.). Courts in other jurisdiction have granted motions to dismiss or stay claims with similar arbitration provisions requiring arbitration in Singapore.  *Sanum Inv. Ltd. v. San Marco Cap. Partners LLC*, 263 F. Supp. 3d 491, 497 (D. Del. 2017) (granting motion to dismiss based on

Singapore arbitration clause); *Mullen Techs., Inc. v. Qiantu Motor (Suzhou) LTD.*, No. 19-cv-1979, 2020 WL 3573371, at *4 (S.D. Cal. July 1, 2020) (holding agreement to arbitrate dispute in Singapore valid and enforceable); *Krystal, Inc. v. China United Transp., Inc.*, No. 16-cv-02406, 2017 WL 6940544, at *6 (C.D. Cal. Apr. 12, 2017) (enforcing agreement to litigate before SIAC). Plaintiffs' claims relating to use of FTX Trading should be similarly dismissed.

### 4. Plaintiffs consented to FTX's terms of service, which included arbitration agreements and class action waivers.

At all relevant times, Plaintiffs could not have created FTX US accounts, which were required to use the platform's services, without consenting to the FTX US User Agreement.[8] *See* January 6, 2023 Internet Search; *see also* FTX US User Agreement at 1, ¶ 1 ("By using our Services, you agree to be bound by these Terms. If you don't agree to be bound by these Terms, do not use the Services."); *id.* at 1, ¶ 2 ("If you continue to use the Services after we have posted updated Terms it means that you accept and agree to the changes."). Section 30 of the FTX US User Agreement mandates that disputes "will be resolved solely by binding, individual arbitration and not in a class, representative or consolidated action or proceeding." *See* FTX US User Agreement at 12. In addition to Section 30, there exists a bolded, capitalized warning on the first page of the terms of service which emphasizes the class action waiver and individual arbitration clause. *Id.* at 1. Moreover, around and as of May 16, 2022, FTX US displayed its ToS prominently at the bottom of its website, under the header "Legal."[9]

Plaintiffs similarly consented to the FTX Trading User Agreement, to the extent they allege use of FTX Trading services. *See* FTX Trading User Agreement at 1 ("By registering for a

---

[8] *See* supra n. 1.

[9] *See* supra n. 1.

Platform account . . . or using the Services, you agree that you have read, understand and accept the Terms . . .  and you acknowledge and agree that you will be bound by and comply with the Terms.").  Section 38.12 of the FTX Trading User Agreement contains an arbitration agreement and class action waiver.  *See* FTX Trading User Agreement at 27 ("[A]ny Dispute shall be referred to and finally . . . determined by arbitration . . . on an individual basis only and not as a claimant or class member in a purported class or representative action[.]").  The FTX Trading User Agreement also calls attention to the arbitration agreement and class action waiver on its first page.  *Id*. at 1 (". . . all Disputes to be resolved by way of legally binding arbitration on an individual basis only and not as a claimant or class member . . .").

Accordingly, if Plaintiffs used FTX US or FTX Trading services as alleged, they consented to the respective platform's terms of service.  *See* Am. Compl. at 1 (alleging use of platform services).  This includes the arbitration agreements and class action waivers contained therein.

### 5.      The class action waivers are enforceable.

It is well-settled that arbitration agreements containing class action waivers are enforceable.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).  "Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."  *Id.  Concepcion* ended California's prohibition against class action waivers in this setting, as previously set forth in *Discover Bank* and progeny. *Concepcion*, 563 U.S. at 344 (abrogating *Discover Bank v. Superior Ct. of L.A.*, 113 P.3d 1100 (Cal. 2005)); *Laver v. Credit Suisse Sec. (USA), LLC*, 976 F.3d 841, 846 (9th Cir. 2020) (affirming enforcement of class action waiver); *Lag Shot LLC v. Facebook, Inc.*, No. 21-cv-01495, 2021 WL 2660433 (N.D. Cal. June 25, 2021) (noting *Discover Bank* prohibition against class action waivers was rejected by Supreme Court and granting motion to compel arbitration; *Nguyen v. Tesla, Inc.*, No. 819-cv-01422, 2020 WL 2114937, at *6 (C.D. Cal. Apr. 6, 2020) (dismissing class claims

which were barred by individual arbitration agreements).  Here, Plaintiffs' class claims are barred by the class action waivers and should be dismissed.

## 6.  The FTX arbitration agreements are valid and enforceable.

The FTX arbitration agreements, which contain a class action waiver, are valid and enforceable.  Valid arbitration agreements were formed when Plaintiffs used FTX services.  "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state law principles that govern the formation of contracts." *Houtchens*, 2022 WL 17736778, at *2 (citations omitted).[10]

Similar arbitration agreements, including those containing class action waivers and those existing in an online ToS, are regularly enforced by courts applying California law (which is the applicable law, in accordance with the choice-of-law provision in the same ToS).  *See Allen v. Shutterfly, Inc.*, No. 20-cv-02448, 2020 WL 5517172, at *6 (N.D. Cal. Sept. 14, 2020) ("In sum, the Court finds that Shutterfly may compel Plaintiff to arbitration pursuant to the 2018 TOS."); *Tompkins v. 23andMe, Inc.*, No. 5:13-cv-05682, 2014 WL 2903752, at *14 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) ("The Court addresses these in turn and finds that the terms are not so unduly harsh or one-sided that they are substantively unconscionable."); *California Crane Sch., Inc. v. Google LLC*, No. 21-cv-10001, 2022 WL 3348425, at *5 (N.D. Cal. Aug. 12, 2022) (finding a valid arbitration agreement in ToS existed and compelling arbitration); *Bertha Dominguez v. Sonesta Int'l Hotels Corp.*, No. 22-cv-03027-JCS, 2023 WL 25707, at *9 (N.D. Cal. Jan. 3, 2023) (granting motion to compel arbitration).  The present arbitration agreements, including the class action waivers, should be similarly enforced here.

---

[10] For FTX Trading, the proper discussion is likely grounded in English law, as stated in the FTX Trading User Agreement.  For the sake of brevity, this argument is excluded from the Motion.

Plaintiffs might try to argue that the arbitration agreements are unconscionable under California law, but such an argument would fail.  "Under California law, a court may refuse to enforce a provision of a contract if it determines that the provision was 'unconscionable at the time it was made.'"  *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (citing Cal. Civ. Code § 1670.5(a)).  An unconscionability defense requires the party opposing arbitration to demonstrate *both* procedural and substantive unconscionability.  *Id.* (citations omitted).  If either form of unconscionability is not present, the contract is not unconscionable.  *Id.*

"[T]he threshold inquiry in California's unconscionability analysis is whether the arbitration agreement is adhesive."  *California Crane Sch., Inc.*, 2022 WL 3348425, at *3 (N.D. Cal. Aug. 12, 2022) (citing *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016)).  "If there is an opportunity to opt out, the arbitration agreement is not adhesive, and thus not procedurally unconscionable."  *Id.* (alterations and internal quotations omitted).  Here, the arbitration agreements are not adhesive, as they offer users the opportunity to opt-out through declining to use FTX's services entirely.

Even if the arbitration agreements were adhesive, the agreements are still not procedurally unconscionable because reasonable market alternatives existed when Plaintiffs allegedly registered their FTX accounts.  "Contracts of adhesion are often procedurally unconscionable, but not always, especially when reasonable market alternatives exist."  *Flores-Mendez v. Zoosk, Inc.*, No. 20-cv-04929 WHA, 2022 WL 2967237, at *2 (N.D. Cal. July 27, 2022) (citations omitted). Plaintiffs could have instead chosen to register with one of FTX's ubiquitous competitors.[11]

---

[11] "If you're interested in buying cryptocurrency, you need to open an account with a crypto exchange. **There are around 500 examples to choose from**[.]" Farran Powell, *10 Best Crypto Apps & Exchanges Of 2023*, FORBES, Mar. 1, 2023, https://www.forbes.com/advisor/investing/cryptocurrency/best-crypto-

Accordingly, regardless of the question of adhesion, the arbitration agreements are not procedurally unconscionable.

The arbitration agreements are also not substantively unconscionable. "[A] proper showing of substantive unconscionability requires the provision in question to be so one-sided as to shock the conscience." *Id.* (citations omitted).  As explained above,

> In *Concepcion*, the Court upheld the enforceability of AT&T's class-action waiver which provided for arbitration of all disputes between the parties but required that the claims be brought in an individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.  In doing so, the Court rejected the argument that a contractual provision is substantively unconscionable for making an individual action less financially attractive than a class action.

*Id.* (internal citations and quotations omitted).  Accordingly, the clauses are not substantively unconscionable.  Regardless, both forms of unconscionability are needed to render a provision unconscionable.  Accordingly, Plaintiffs cannot avoid the contractual arbitration agreements and class action waivers by asserting they are unconscionable.

In sum, by allegedly using FTX's services, Plaintiffs entered into valid and enforceable arbitration agreements included in the FTX US User Agreement and FTX Trading User Agreement.  Those arbitration agreements are governed by the FAA.[12]  As described above, both gateway issues for determining whether Plaintiffs' claims must be submitted to arbitration are met. Therefore, this Court should enforce the arbitration agreements by their terms, as dictated by the FAA and Supreme Court precedent.  As Plaintiffs' own pleading establishes that they cannot bring these claims in this Court, the claims against Mr. Bankman-Fried should be compelled to arbitration or dismissed with prejudice.

---

exchanges/#:~:text=If%20you're%20interested%20in,both%20new%20and%20experienced%20investors (emphasis added).

[12] The FTX Trading User Agreement is also governed by SIAC.

**7.     Florida and Eleventh Circuit law would not result in a different outcome for either ToS.**

Although the applicable law is explicitly included in each ToS, applying Florida or Eleventh Circuit law would not change the outcome for either ToS.  *See Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (discussing purpose of FAA).  As described above, Eleventh Circuit law supports enforcing the respective choice-of-law and choice-of-venue provisions.

Similar arbitration agreements, including those containing class action waivers and those existing in an online ToS, are regularly enforced by courts with the Eleventh Circuit.  *See, e.g. Webb v. DoorDash, Inc.*, 451 F. Supp. 3d 1360, 1369 (N.D. Ga. 2020) (enforcing class action waiver); *Rodriguez v. JPay, Inc.*, No. 19-cv-14137, 2019 WL 11623936, at *6 (S.D. Fla. Oct. 17, 2019), *report and recommendation adopted*, 2019 WL 11623933 (S.D. Fla. Oct. 31, 2019) (granting motion to compel arbitration based on agreement within terms of service); *Healy v. Honorlock Inc.*, 609 F. Supp. 3d 1294, 1298 (S.D. Fla. 2022) (granting motion to compel arbitration based on clause within terms of service);  *Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1236 (S.D. Fla. 2020) (granting motion to compel arbitration).

## III.     CONCLUSION

For the foregoing reasons, the Court should stay this case as to Mr. Bankman-Fried pending the conclusion of the criminal proceedings against him.  Alternatively, the Court should compel arbitration or dismiss with prejudice the claims against Mr. Bankman-Fried in the Amended Complaint.

<u>**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)**</u>

Counsel for Mr. Bankman-Fried conferred with Plaintiffs' counsel and Co-Defendants' counsel regarding the relief sought in this motion in a good faith effort to resolve the issues raised in the motion.  Plaintiffs do not oppose Mr. Bankman-Fried's request for a stay pending resolution of the criminal proceeding. The "Celebrity Defendants" take no position on the request for a stay.


Dated: April 14, 2023                     Respectfully Submitted,

                                          */s/ Adam M. Schachter*
                                          GERALD E. GREENBERG
                                          Florida Bar No. 440094
                                          ggreenberg@gsgpa.com
                                          ADAM M. SCHACHTER
                                          Florida Bar No. 647101
                                          aschachter@gsgpa.com
                                          GELBER SCHACHTER & GREENBERG, P.A.
                                          SunTrust International Center
                                          One Southeast Third Avenue, Suite 2600
                                          Miami, Florida 33131
                                          Telephone: (305) 728-0950
                                          E-service: efilings@gsgpa.com


                                          JEREMY D. MISHKIN *(pro hac vice)*
                                          jmishkin@mmwr.com
                                          RICHARD M. SIMINS *(pro hac vice)*
                                          rsimins@mmwr.com
                                          MONTGOMERY MCCRACKEN
                                          1735 Market Street, 21st Floor
                                          Philadelphia, PA 19103-7505
                                          Telephone 215-772-1500

                                          *Counsel for Defendant Sam Bankman-Fried*