**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO. 1:22-cv-23753-KMM**

EDWIN GARRISON, *et al.*, on behalf of themselves
and all others similarly situated

Plaintiffs,

v.

SAM BANKMAN-FRIED, *et al.*,

Defendants.

_____/

**SPECIALLY APPEARING DEFENDANT SAM TRABUCCO'S MOTION TO**
**DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FEDERAL**
**RULES OF CIVIL PROCEDURE 12(b)(2), 12(b)(5), 12(b)(6), AND 9(b)**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..........................................................................1

THE FAC'S ALLEGATIONS............................................................................2

I.      The FAC Is A Tale Of Two Halves. ...................................................2

II.     The FAC Mentions Mr. Trabucco In Just Four Paragraphs. ...........................3

III.    The FAC Asserts Four Counts, Each Of Which Is Apparently Asserted
        Against All Defendants...........................................................4

ARGUMENT ................................................................................4

I.      Service At A House Where The Defendant Does Not Reside Is Invalid.....................4

        A.      Plaintiffs Bear The Burden Of Showing Valid Service On Mr.
                Trabucco. ...............................................................4

        B.      Plaintiffs' Purported Service On Mr. Trabucco Fails Under Federal,
                Florida, and Maine Law. .................................................5

II.     Plaintiffs Otherwise Fail To Establish Personal Jurisdiction Over Mr.
        Trabucco. ...............................................................6

        A.      As A California Citizen, Mr. Trabucco Is Not Subject To General
                Jurisdiction In Florida. ...............................................7

        B.      Plaintiffs Fail To Allege A Prima Facie Case For Specific Personal
                Jurisdiction Over Mr. Trabucco Under Florida's Long-Arm Statute. ..............8

                i.      No Factual Allegations Describe A "Tortious Act" By Mr.
                        Trabucco, Let Alone One Committed Within Florida. ....................9

                ii.     No Factual Allegations Demonstrate Mr. Trabucco Carried On
                        A "Business Venture" In This State...................................10

                iii.    Plaintiffs Cannot Rely On A "Conspiracy Theory" Of Personal
                        Jurisdiction. ...............................................11

        C.      Exercising Personal Jurisdiction Over Mr. Trabucco Would Violate
                Due Process.................................................11

III.    Plaintiffs Also Fail To State A Claim Against Mr. Trabucco...................12

        A.      The Eighteen-Defendant FAC Is A Shotgun Pleading That Scarcely
                Mentions Mr. Trabucco. .................................................12

        B.      The FAC Fails To State A Claim Against Mr. Trabucco Under The
                Florida Securities And Investor Protection Act. ...............15

        C.      The FAC Fails To State A FDUTPA Claim Against Mr. Trabucco..............16

        D.      The FAC Fails To State A Claim Against Mr. Trabucco For Civil
                Conspiracy. .................................................17

        E.      The FAC's Declaratory-Judgment Claim Should Be Dismissed As
                Duplicative.................................................19

CONCLUSION....................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. United Life Ins. Co. v. Martinez,*
  480 F.3d 1043 (11th Cir. 2007) ...................................................................... 18

*Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*,
  938 F. Supp. 825 (S.D. Fla. 1996) ................................................................. 15

*Banco de los Trabajadores v. Cortez Moreno*,
  237 So. 3d 1127 (Fla. 3d DCA 2018) ............................................................ 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................... 11

*Bicz v. Colliers Int'l Detroit, LLC*,
  2019 WL 4714373 (M.D. Fla. Sept. 10, 2019) .............................................. 11

*United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.*,
  290 F.3d 1301 (11th Cir. 2002) ...................................................................... 18

*Coccaro v. Geico Gen. Ins. Co*,
  648 F. App'x 876 (11th Cir. 2016) ................................................................. 19

*Courboin v. Scott*,
  596 F. App'x 729 (11th Cir. 2014) ................................................................... 7

*Covenant Imaging LLC v. Viking Rigging & Logistics, Inc.*,
  2020 WL 12442002 (S.D. Fla. Feb. 14, 2020) .............................................. 11

*Cox v. Quigley*,
  141 F.R.D. 222 (D. Me. 1992) ......................................................................... 6

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).............................................................................. 6, 7, 11

*Dillon v. Axxsys Int'l, Inc.*,
  185 F. App'x 823 (11th Cir. 2006) ................................................................. 15

*Ferenchak v. Zormati*,
  572 F. Supp. 3d 1284 (S.D. Fla. 2021) ............................................................ 7

*Fly Braz. Grp., Inc. v.  Gov't of Gabon, Afr.*,
  709 F. Supp. 2d 1274 (S.D. Fla. 2010) ............................................................ 4

*Gentry v. Harborage Cottages-Stuart, LLP*,
  2008 WL 1803637 (S.D. Fla. Apr. 21, 2008) ................................................ 19

*Goodyear Dunlop Tires Ops., S.A. v. Brown*
    564 U.S. 915 (2011) ................................................................................................... 6

*Heck v. Bank Liberty*,
    86 So. 3d 1281 (Fla. 1st DCA 2012) ........................................................................ 6

*Helix Elec., Inc. v. Power Design, Inc.*,
    295 So. 3d 358 (Fla. 2d DCA 2020) ......................................................................... 9

*Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*,
    553 F.3d 1351 (11th Cir. 2008) ............................................................................... 4

*International Shoe Co. v. State of Washington*,
    326 U.S. 310 (1945) .............................................................................................. 6, 12

*Island Wifi Ltd., LLC v. AT&T Mobility Nat'l Accounts, LLC*,
    2021 WL 210536 (S.D. Fla. Jan. 19, 2021) ........................................................... 10

*Kais v. Mansiana Ocean Residences, LLC*,
    2009 WL 825763 (S.D. Fla. Mar. 26, 2009) ........................................................... 16

*Kammona v. Onteco Corp.*,
    587 F. App'x 575 (11th Cir. 2014) ........................................................................... 6

*Klayman v. Cable News Network*,
    2023 WL 2027843 (11th Cir. Feb. 16, 2023) ......................................................... 13

*Lewis v. Mercedes-Benz USA, LLC*,
    530 F. Supp. 3d 1183 (S.D. Fla. 2021) ............................................................. 10, 11

*Louis Vuitton Malletier, S.A. v. Mosseri*,
    736 F.3d 1339 (11th Cir. 2013) ............................................................................... 7

*Maale v. Francis*,
    258 F.R.D. 533 (S.D. Fla. 2009) .............................................................................. 4

*Magluta v. Samples*,
    256 F.3d 1282 (11th Cir. 2001) ......................................................................... 13, 14

*Mama Jo's Inc. v. Sparta Ins. Co.*,
    2018 WL 3412926 (S.D. Fla. Feb. 9, 2018) ........................................................... 19

*Marrache v. Bacardi U.S.A., Inc.*,
    17 F.4th 1084 (11th Cir. 2021) ............................................................................... 16

*Mathis v. City of Lakeland*,
    2023 WL 2568814 (11th Cir. Mar. 20, 2023) ......................................................... 14

*McCullough v. Royal Caribbean Cruises, Ltd.*,
    268 F. Supp. 3d 1336 (S.D. Fla. 2017) .................................................................... 7

*Melgarejo v. Pycsa Pan., S.A.*,
   537 F. App'x 852 (11th Cir. 2013) ................................................................................ 7, 10

*Metnick & Levy, P.A. v. Seuling*,
   123 So. 3d 639 (Fla. 4th DCA 2013) ................................................................................ 9

*Moss v. Est. of Hudson*,
   252 So. 3d 785 (Fla. 5th DCA 2018) ................................................................................ 6

*MSP Recovery Claims, Series 44 LLC v. Great Am. Ins. Co.*,
   2021 WL 8343191 (S.D. Fla. June 11, 2021) ................................................................... 8

*NHB Advisors, Inc. v. Czyzyk*,
   95 So. 3d 444 (Fla. 4th DCA 2012) ................................................................................. 9

*Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*,
   484 U.S. 97 (1987) ............................................................................................................ 4

*Rattner v. 1809 Brickell LP*,
   2022 WL 4770402 (S.D. Fla. Aug. 23, 2022) ................................................................ 14

*Reef Clematis LLC v. Reef and Fum Bar Grp. LLC*,
   2009 WL 5217077 (S. D. Fla. Dec. 30, 2009) ................................................................ 6

*Sculptchair, Inc. v. Century Arts, Ltd.*,
   94 F.3d 623 (11th Cir. 1996) ......................................................................................... 10

*SFM Holdings, Ltd. v. Banc of America Securities, LLC*,
   764 F.3d 1327 (11th Cir. 2014) ..................................................................................... 17

*Snow v. DirectTV, Inc.*,
   450 F.3d 1314 (11th Cir. 2006) ....................................................................................... 8

*Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*,
   904 F.3d 1197 (11th Cir. 2018) ..................................................................................... 18

*Taylor v. Greene*,
   2010 WL 5248502 (S.D. Fla. Dec. 16, 2010) ................................................................ 19

*Tippens v. Round Island Plantation L.L.C.*,
   2009 WL 2365347 (S.D. Fla. Jul. 31, 2009) .................................................................. 17

*United Techs. Corp. v. Mazer*,
   556 F.3d 1260 (11th Cir. 2009) ....................................................................................... 7

*UTC Indus., Inc. v. Pres. Fin. Corp.*,
   976 So. 2d 92 (Fla. 3d DCA 2008) ................................................................................ 17

*Vision Int'l Prod. Inc. v. Liteco S.R.L.*,
   2007 WL 9700539 (S.D. Fla. Aug. 8, 2007) ................................................................... 8

*Walden v. Fiore*,
   571 U.S. 277 (2014) ......................................................................................................... 7, 11

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
   792 F.3d 1313 (11th Cir. 2015) ............................................................... 12, 13, 14

**Statutes**

28 U.S.C. § 2201 ......................................................................................................... 19

Fla. Stat. § 48.031(1)(a) ............................................................................................. 5

Fla. Stat. § 48.193(1)(a) ............................................................................................. 8

Fla. Stat. § 48.193(1)(a)(1) ....................................................................................... 10

Fla. Stat. § 48.193(1)(a)(2) ......................................................................................... 9

Fla. Stat. § 48.193(1)(a)(6) ....................................................................................... 10

Fla. Stat. § 517.07 ............................................................................................... 4, 15

Fla. Stat. § 517.07(1) ................................................................................................. 15

Fla. Stat. § 517.211 ................................................................................................... 15

Fla. Stat. § 517.211(1) ......................................................................................... 15, 16

**Other Authorities**

Fed. R. Civ. P. 4(e)(1) ................................................................................................. 5

Fed. R. Civ. P. 4(e)(2)(A) ....................................................................................... 4, 5

Fed. R. Civ. P. 4(e)(2)(B) ....................................................................................... 4, 5

Fed. R. Civ. P. 4(e)(2)(C) ........................................................................................... 5

Fed. R. Civ. P. 9(b) ............................................................................................. 17, 18

Fed. R. Civ. P. 12(b) ................................................................................................... 1

Fed. R. Civ. P. 12(b)(2) ............................................................................................... 1

Fed. R. Civ. P. 12(b)(5) ............................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1

Fed. R. Civ. P. 12(g)(1) ............................................................................................... 1

Me. R. Civ. P. 4(d)(1) ................................................................................................. 5

## **PRELIMINARY STATEMENT**[1]

In the wake of FTX's ongoing bankruptcy, Plaintiffs sue eighteen defendants in their First Amended Class Action Complaint ("FAC"). Suing over alleged losses from FTX's Yield-Bearing Accounts ("YBAs"), Plaintiffs principally target celebrities who allegedly promoted FTX. Plaintiffs also target FTX employees or officers who allegedly participated in the offer and sale of YBAs. Plaintiffs thus bring all of their claims on behalf of "FTX consumers" against those who allegedly "promoted, assisted in, and/or actively participated in" FTX's offerings and sales of YBAs.

Specially Appearing Defendant Sam Trabucco ("Mr. Trabucco") is not among the celebrity defendants, and he was not an FTX employee or officer. And there are no allegations that Mr. Trabucco "promoted, assisted in, and/or actively participated in" FTX's offerings and sales of YBAs.

In fact, the FAC barely mentions Mr. Trabucco at all. The FAC alleges that Mr. Trabucco "fiercely traded crypto" (whatever that might mean), once served as a co-CEO of Alameda Research, LLC ("Alameda") and, in some unspecified way, "helped oversee Alameda's expansion" before he voluntarily left Alameda well before the FTX bankruptcy. That is all the sprawling 96-page FAC says about Mr. Trabucco. Aside from those few, sparse allegations, the FAC does not allege ***any*** actual conduct by Mr. Trabucco, much less any wrongful conduct or any conduct related in any way to FTX's YBAs. The FAC's failure to make any such allegations makes clear that Plaintiffs have failed to state a claim. This case should therefore be dismissed as to Mr. Trabucco.

---

[1] In accord with Fed. R. Civ. P. 12(g)(1), Mr. Trabucco moves jointly to dismiss the claims against him under Fed. R. Civ. 12(b)(2), 12(b)(5), and 12(b)(6), and raises each motion in the alternative. Mr. Trabucco's joint presentation of these three grounds for dismissal does not waive (and should not be construed to waive) any objections to service or personal jurisdiction over Mr. Trabucco. Fed. R. Civ. P. 12(b) ("No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.").

But this Court need not even consider the Rule 12(b)(6) grounds for dismissal, because the claims against Mr. Trabucco can and should be dismissed as a threshold matter for either of two other reasons.

First, Plaintiffs failed to serve Mr. Trabucco properly. The Court thus lacks jurisdiction over him. Plaintiffs admit they did not serve the summons and FAC on Mr. Trabucco. Instead, as their return of service recites, Plaintiffs served Mr. Trabucco's mother at an address in Maine. But Plaintiffs' FAC acknowledges that Mr. Trabucco does not reside at the Maine address; the FAC alleges that he resides thousands of miles away, in California.

Second, in addition to this patent service defect, this Court otherwise lacks personal jurisdiction over Mr. Trabucco. As a California citizen, Mr. Trabucco is not subject to all-encompassing general jurisdiction in Florida. Further, the FAC fails to allege any facts supporting a prima facie case for specific jurisdiction. Again, the FAC alleges no facts regarding any conduct by Mr. Trabucco, much less any purposeful act or wrongful conduct directed at or made *within* Florida that could suffice to establish specific jurisdiction over Mr. Trabucco.

For these reasons and as further described below, the Court should dismiss all claims against Mr. Trabucco for improper service, lack of personal jurisdiction or, alternatively, failure to state a claim.

## THE FAC'S ALLEGATIONS

### I.      The FAC Is A Tale Of Two Halves.

The first half of the FAC chronicles the alleged history of FTX, beginning with its founding in 2019, when Defendants Sam Bankman-Fried (FTX's co-founder and CEO), Gary Wang (FTX's co-founder), and Nishad Singh (FTX's Director of Engineering) allegedly established FTX "as an exchange or marketplace for the trading of [cryptocurrency] assets." FAC ¶ 75. The FAC alleges that FTX's business included the "offer and sale" of YBAs to FTX

users. *Id.* ¶ 5. The FAC also alleges that Bankman-Fried launched a "quantitative crypto trading firm, Alameda Research, in November 2017." *Id.* ¶ 76. The FAC alleges that, in late 2022, FTX collapsed because of a liquidity crisis, potentially leaving YBA-holding customers with losses. *Id.* ¶¶ 5, 127-28. The FAC also alleges that FTX's collapse was hastened by Bankman-Fried's "secret transferr[ing] [of] at least $4 billion in customer funds from FTX to Alameda without telling anyone." *Id.* ¶ 130 (emphasis omitted).

The second half of the FAC focuses on celebrities and athletes who allegedly promoted or endorsed FTX, including Tom Brady, Gisele Bündchen, Kevin O'Leary, Udonis Haslem, David Ortiz, Stephen Curry, the Golden State Warriors, Shaquille O'Neal, William Trevor Lawrence, Shohei Ohtani, Naomi Osaka, and Larry David. *Id.*¶¶ 30-42, 204-32. The FAC alleges that these "brand ambassadors" falsely represented FTX as a "safe" place to buy and sell crypto. *E.g.*, *id.* ¶¶ 194, 204. The FAC also claims that the YBAs amount to "securities" and that the celebrity defendants were required to disclose any payments they received from FTX for their alleged promotional work. *E.g.*, *id.* ¶¶ 1-2, 5, 30.

## II.  The FAC Mentions Mr. Trabucco In Just Four Paragraphs.

The FAC does not allege that Mr. Trabucco ever served as an officer, director, or employee of FTX, or that he was paid to promote FTX or its YBAs. In fact, the FAC barely mentions Mr. Trabucco at all. The entirety of the allegations mentioning Mr. Trabucco span just four of the FAC's 280 paragraphs:

- "Trabucco, the former Co-CEO of Alameda Research, LLC, is a citizen and resident of the State of California" (FAC ¶ 45);

- "Sam Trabucco [was] also part of the group and upon moving to Hong Kong the group lived like college students and fiercely traded crypto" (*id*. ¶ 78);

- "After Defendant Bankman-Fried established FTX in 2019, Defendant Ellison began taking more responsibility at Alameda Research along with Sam Trabucco, who served as CEO" (*id*. ¶ 79); and

- Mr. Trabucco was appointed "Co-CEO of Alameda" in October 2021;

3

allegedly "helped oversee Alameda's expansion beyond its initial market-neutral, but relatively low-profit business as a market maker for low volume cryptocurrencies into risker trading strategies, according to a Twitter thread;" and Mr. Trabucco "depart[ed] from" Alameda in August 2022 (*id.* ¶ 80).

Apart from these bare mentions of Mr. Trabucco's name in these four background paragraphs, the FAC alleges nothing at all about Mr. Trabucco or anything he supposedly did.

## III.  The FAC Asserts Four Counts, Each Of Which Is Apparently Asserted Against All Defendants.

The FAC alleges four counts, apparently against all of the eighteen defendants, for allegedly violating Section 517.07 of the Florida Securities and Investor Protection Act (Count I), the Florida Deceptive and Unfair Trade Practices Act (Count II), "civil conspiracy" (Count III), and for a declaratory judgment that "the YBAs were securities," "the Deceptive FTX platform did not work as advertised," and unspecified Defendants "were paid exorbitant sums of money to peddle FTX" (Count IV).

## ARGUMENT

## I.  Service At A House Where The Defendant Does Not Reside Is Invalid.

### A.  Plaintiffs Bear The Burden Of Showing Valid Service On Mr. Trabucco.

Valid service of process "is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360 (11th Cir. 2008) (quotation marks and citation omitted). As this Court recognized in the March 17, 2023 paperless order (ECF No. 101), service of process protects a defendant's right to due process. *See also Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) (explaining the purpose of the service requirement). Plaintiffs bear the burden of proving the validity of service. *Maale v. Francis*, 258 F.R.D. 533, 541 (S.D. Fla. 2009); *Fly Braz. Grp., Inc. v. Gov't of Gabon, Afr.*, 709 F. Supp. 2d 1274, 1279 (S.D. Fla. 2010).

Federal Rule of Civil Procedure 4 specifies how a plaintiff may serve an individual

defendant. Under that rule, a plaintiff may serve an individual defendant by "delivering a copy of the summons and of the complaint to the individual personally" (Fed. R. Civ. P. 4(e)(2)(A)), "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there" (Fed. R. Civ. P. 4(e)(2)(B)), or "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2)(C). In addition, a plaintiff may serve a defendant by following the state-law service requirements of the state where the action pends (here, Florida) or where service is purportedly made (here, Maine). Fed. R. Civ. P. 4(e)(1).

> **B.    Plaintiffs' Purported Service On Mr. Trabucco Fails Under Federal, Florida, and Maine Law.**

On its face, the putative return of service (ECF No. 81) shows that Plaintiffs failed to properly serve Mr. Trabucco. The process server purported to effect "substitute service," and the scribbled return says that "Carol the Defendants [sic] mother Received The Documents" at an address in Maine. *Id.* The return shows no delivery to Mr. Trabucco "personally" (Fed. R. Civ. Civ. P. 4(e)(2)(A)), and Mr. Trabucco's mother is not an agent "authorized by appointment or by law to receive service of process" (Fed. R. Civ. P. 4(e)(2)(C)). The address in Maine is not Mr. Trabucco's "dwelling or usual place of abode" (Fed. R. Civ. P. 4(e)(2)(B)). Plaintiffs know this—their FAC alleges that Mr. Trabucco "is a citizen and resident of the State of California." FAC ¶ 45.

Neither the law of Florida (where this action pends) nor of Maine (where Plaintiffs attempted service) permits service on a relative at an address where the defendant does not reside. Fla. Stat. § 48.031(1)(a) ("Service of original process is made by delivering . . . at *his or her usual place of abode* with any person residing therein who is 15 years of age or older and informing the person of their contents") (emphasis added); Me. R. Civ. P. 4(d)(1) ("[t]he summons, complaint, and notice regarding Electronic Service shall be served together . . . by delivering a copy of the summons, complaint, and notice regarding Electronic Service to the

individual personally or by leaving copies thereof at the individual's *dwelling house or usual place of abode* with some person of suitable age and discretion then residing therein") (emphasis added).

Courts applying both Florida law and Maine law consistently recognize that a "dwelling" or "usual place of abode" means the place where the ***defendant*** actually resides, not where his family (even his nuclear family) resides at the time of the attempted service. *See, e.g.*, *Reef Clematis LLC v. Reef and Fum Bar Grp. LLC*, 2009 WL 5217077, at *1 n.1 (S. D. Fla. Dec. 30, 2009) (applying Florida law); *Heck v. Bank Liberty*, 86 So. 3d 1281, 1283 (Fla. 1st DCA 2012) (quashing service where, at the time of attempted service, the defendant did not live at the residence where the defendant's wife received service); *Kammona v. Onteco Corp.*, 587 F. App'x 575, 578 (11th Cir. 2014). *Cox v. Quigley* is instructive. There, the District of Maine quashed attempted service on the defendant's parent where, as here, the defendant did not reside at the address where a parent was served. 141 F.R.D. 222 (D. Me. 1992). Here, Plaintiffs allege that Mr. Trabucco "resides" in California, not in Maine, where Plaintiffs purported to effect service. As a result, Plaintiffs failed to properly serve Mr. Trabucco.

In sum, service at the address in Maine was invalid under federal, Florida, and Maine law governing service of process.[2] The Court thus lacks personal jurisdiction over Mr. Trabucco, and the claims against him should be dismissed for this reason alone.

## II.     Plaintiffs Otherwise Fail To Establish Personal Jurisdiction Over Mr. Trabucco.

Personal jurisdiction requires a defendant to have "minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (citing *Goodyear*

---

[2] Any suggestion that Mr. Trabucco waived any objection to defective service by appearing in this action would be incorrect. As the Court recognized in its March 17, 2023 paperless order (ECF No. 101), a defendant's "actual knowledge of a suit does not cure insufficient service of process." *Id.* (quoting *Moss v. Est. of Hudson*, 252 So. 3d 785, 787 (Fla. 5th DCA 2018)).

*Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 923 (2011), which in turn quotes *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)). *International Shoe* and progeny identify two types of personal jurisdiction that comport with due process: general jurisdiction and specific jurisdiction. *Daimler*, 571 U.S. at 121-22. General jurisdiction permits a court to adjudicate any claim against the defendant (regardless of the claim's connection to the forum state); specific jurisdiction permits a court to adjudicate only those claims arising from or relating to the defendant's suit-related contacts with the forum state. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Both general and specific jurisdiction require (1) statutory authorization and (2) compliance with due process. At the first step, courts "look to the long-arm statute" of the forum state to "determine whether it authorizes exercising [personal] jurisdiction over the defendants." *Courboin v. Scott*, 596 F. App'x 729, 734 (11th Cir. 2014); *Melgarejo v. Pycsa Pan., S.A.*, 537 F. App'x 852, 858-59 (11th Cir. 2013). As discussed below, Plaintiffs' factual allegations fail at both steps: Nothing in Florida's long-arm statute would allow the Court to exercise personal jurisdiction over Mr. Trabucco and, in any event, the exercise of personal jurisdiction would violate due process here.

Plaintiffs bear "the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). For the reasons explained below, Plaintiffs' factual allegations fail to meet that burden.

A.   **As A California Citizen, Mr. Trabucco Is Not Subject To General Jurisdiction In Florida.**

For an individual defendant, the "paradigm forum" for exercising "general jurisdiction is the individual's domicile." *Daimler*, 571 U.S. at 137. Here, Plaintiffs acknowledge that Mr. Trabucco is not domiciled in Florida; rather, Plaintiffs allege that Mr. Trabucco "is a citizen and resident of the State of California." FAC ¶ 45; *see Ferenchak v. Zormati*, 572 F. Supp. 3d

1284, 1291 (S.D. Fla. 2021) (collecting authority that a citizen and resident of a state other than Florida is not domiciled in Florida). And Mr. Trabucco, who did not consent to personal jurisdiction in Florida, was "not present within the forum when served with process," as discussed in Section I(B) above. *See, e.g.*, *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F.Supp.3d 1336, 1350-51 (S.D. Fla. 2017) ("Federal courts throughout the United States have held … that general jurisdiction over any individual comports with due process ***only*** in these three scenarios," namely, where the individual (1) is domiciled in the state, (2) consents to personal jurisdiction, or (3) is served in state with service of process.). As a California citizen not served personally with process while in Florida and who has not consented to personal jurisdiction in Florida, Mr. Trabucco is not subject to general jurisdiction in Florida.

> **B.     Plaintiffs Fail To Allege A Prima Facie Case For Specific Personal Jurisdiction Over Mr. Trabucco Under Florida's Long-Arm Statute.**

The FAC does not cite any provision of Florida's long-arm statute, Fla. Stat. § 48.193, that would authorize the exercise of personal jurisdiction over Mr. Trabucco here. Instead, Plaintiffs attempt to plead personal jurisdiction with the conclusory allegation that all of the "Defendants" somehow allegedly:

> [C]onduct substantial and not isolated business in Florida, and/or have otherwise intentionally availed themselves of the Florida consumer market through the promotion, marketing, and sale of FTX's YBAs in Florida, which constitutes committing a tortious act within the state of Florida. Defendants have also marketed and participated and/or assisted in the sale of FTX's unregistered securities to consumers in Florida. Further, Defendants have engaged in a conspiracy in which some of the co-conspirators—including some who are Defendants in this action—committed overt acts in furtherance of the conspiracy in the State of Florida.

FAC ¶ 50.

Consistent with *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the precedent makes clear that a conclusory personal jurisdiction allegation (such as paragraph 50 of the FAC) fails to establish a prima facie case of personal jurisdiction. For example, in *Snow v. DirectTV, Inc.*, 450 F.3d 1314 (11th Cir. 2006), the Eleventh Circuit affirmed the dismissal of a complaint that

alleged the defendant "conspired with and acted through its agents DirectTV and Stump, which committed tortious acts in Florida," noting that the (nearly identical) conclusory allegation of wrongdoing was "insufficient to establish a prima facie case of personal jurisdiction." *Id.* at 1318; *accord, e.g.*, *MSP Recovery Claims, Series 44 LLC v. Great Am. Ins. Co.*, 2021 WL 8343191, at *2-5 (S.D. Fla. June 11, 2021); *Vision Int'l Prod. Inc. v. Liteco S.R.L.*, 2007 WL 9700539, at *4-5 (S.D. Fla. Aug. 8, 2007). As further discussed below, the FAC's factual allegations provide no support for either of the two long-arm provisions that Plaintiffs conceivably might attempt to invoke.

### i. No Factual Allegations Describe A "Tortious Act" By Mr. Trabucco, Let Alone One Committed Within Florida.

Plaintiffs fail to allege sufficient facts to rely on the Florida long-arm provision that authorizes personal jurisdiction in certain circumstances where a defendant has "commit[ed] a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). In evaluating if a "tortious act" took place within Florida, courts examine whether the complaint alleges that the non-resident defendant "committed a substantial aspect of the alleged tort in Florida." *NHB Advisors, Inc. v. Czyzyk*, 95 So. 3d 444, 448 (Fla. 4th DCA 2012) (internal quote omitted). This analysis "necessarily focuses [] not on where a plaintiff ultimately felt damages, but where a defendant's tortious conduct occurred." *Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 645 (Fla. 4th DCA 2013); *Helix Elec., Inc. v. Power Design, Inc.*, 295 So. 3d 358, 360 (Fla. 2d DCA 2020).

As discussed throughout this Motion, the prolix 96-page FAC manages to mention Mr. Trabucco in just four background paragraphs and never alleges any tortious act by Mr. Trabucco, much less a tortious act "within this state." Fla. Stat. § 48.193(1)(a)(2). For example, the FAC never alleges that Mr. Trabucco played any role whatsoever in the "promotion, marketing, and sale of FTX's YBAs in Florida" and never alleges that he made any alleged agreement with any alleged co-conspirator to defraud Plaintiffs (much less that Mr. Trabucco made such an alleged agreement within Florida). The background allegations that

Mr. Trabucco "fiercely traded crypto" in Hong Kong (FAC ¶ 78), served for a time as a co-officer of Alameda in some unspecified location, and allegedly "helped oversee Alameda's expansion" (*id.* ¶ 80) do not amount to a tortious act by Mr. Trabucco, much less a "tortious act within this state." Fla. Stat. § 48.193(1)(a)(2).

> **ii.     No Factual Allegations Demonstrate That Mr. Trabucco Carried On A "Business Venture" In This State.**

No factual allegations plausibly support the second conceivably relevant long-arm provision, Fla. Stat. § 48.193(1)(a)(1). That provision permits the exercise of personal jurisdiction in certain circumstances where the defendant is "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state." To meet this standard, the Eleventh Circuit has held that the plaintiff must "show a general course of business activity in the state for pecuniary benefit." *Melgarejo*, 537 F. App'x at 860.

The FAC's allegations describe no business by Mr. Trabucco in Florida at all; indeed, Plaintiffs' only geographic allegations about Mr. Trabucco claim that he lives in California and "fiercely traded crypto" in Hong Kong. FAC ¶¶ 45, 78. No factual allegations show, for example, that Mr. Trabucco set up any office in Florida, sold or offered YBAs from Florida, filmed any advertisements for YBAs from Florida, *or did anything at all in Florida*. Absent factual allegations that "describe the nature of [Mr. Trabucco's] business conducted in this state or how such business gave rise to Plaintiff's claims" (*Island Wifi Ltd., LLC v. AT&T Mobility National Accounts, LLC*, 2021 WL 210536, at *3 (S.D. Fla. Jan. 19, 2021)), the shotgun allegation that all Defendants supposedly and in some unspecified way conducted "substantial and not isolated business in Florida" cannot establish personal jurisdiction over Mr. Trabucco.[3]

---

[3] Plaintiffs also cannot rely on Fla. Stat. § 48.193(1)(a)(6), which permits the exercise of personal jurisdiction in specified circumstances where the plaintiff suffers "injury to persons or property within this state." *Id.* This provision does not apply where, as here, the plaintiff alleges "economic injury without [an] accompanying personal injury or property injury." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 629 (11th Cir. 1996); *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1236 (S.D. Fla. 2021).

iii.    **Plaintiffs Cannot Rely On A "Conspiracy Theory" Of Personal
Jurisdiction.**

Courts consistently refuse to exercise specific jurisdiction under Florida's long-arm
statute pursuant to a "conspiracy theory" where, as here, the plaintiff "fails to plead with
specificity any facts supporting the existence of the conspiracy and provides nothing more than
vague and conclusory allegations regarding a conspiracy involving the defendants." *Bicz v.
Colliers Int'l Detroit, LLC*, 2019 WL 4714373, at *9 (M.D. Fla. Sept. 10, 2019) (internal quote
omitted); *Covenant Imaging LLC v. Viking Rigging & Logistics, Inc.*, 2020 WL 12442002, at
*7 (S.D. Fla. Feb. 14, 2020) (plaintiff "cannot avail itself of a co-conspirator theory of personal
jurisdiction" where it "alleges no facts to support that [the defendant] acted in concert with [the
alleged co-conspirator] in furtherance of a conspiracy—i.e., an agreement to do an unlawful
act or to do a lawful act by unlawful means").[4] As discussed in Section III(D) below, no factual
allegations support (or even attempt to describe) any conspiracy claim against Mr. Trabucco.

C.    **Exercising Personal Jurisdiction Over Mr. Trabucco Would Violate Due
Process.**

In addition to statutory authorization, the exercise of personal jurisdiction must satisfy
due process, *i.e.*, it must not "offend traditional notions of fair play and substantial justice."
*Daimler*, 571 U.S. at 126 (internal quote and cite omitted). In *Walden*, the Supreme Court made
clear that specific jurisdiction focuses particularly on the "defendant's suit-related conduct,"
which "must create a substantial connection" with the forum. 571 U.S. at 284. *Walden*
emphasized two key facets of specific jurisdiction: "First, the relationship must arise out of
contacts that the 'defendant *himself*' creates with the forum State… Second, our 'minimum
contacts' analysis looks to the defendant's contacts with the forum State itself, not the

---

[4] Personal jurisdiction requires a claim-by-claim analysis. *E.g.*, *Lewis*, 530 F. Supp. 3d at 1235-
36. Thus, the "conspiracy theory" of personal jurisdiction could not even arguably help
Plaintiffs establish personal jurisdiction over Mr. Trabucco as to the non-conspiracy claims
asserted in Counts I, II, and IV.

defendant's contacts with persons who reside there." *Id.* at 284-85 (internal quote omitted).

As discussed throughout this Motion, the FAC fails to allege any "suit-related conduct" by Mr. Trabucco at all in Florida, much less "substantial" conduct related to the claims in Counts I through IV. The FAC never alleges, for example, that Mr. Trabucco appeared in any commercials or advertisements for FTX that aired in Florida. The FAC does not allege that Mr. Trabucco sold any YBAs (or even served as an employee, officer, or director of any company that sold or offered YBAs) in Florida, or that Mr. Trabucco ever made any representations to any Plaintiffs about YBAs (or anything else) in Florida. *See* FAC ¶¶ 45, 78-80 (alleging only that Mr. Trabucco was the former Co-CEO of Alameda until August 2022, resides in California, traded crypto "fiercely" in Hong Kong while working at Alameda, and oversaw Alameda's foray into "riskier trading strategies"); FAC at 1 (defining the FTX Entities to mean only "FTX Trading LTD d/b/a FTX[] ("FTX Trading") and West Realm Shires Services Inc. d/b/a FTX US[] ("FTX US")). Absent any well-pleaded factual allegations that connect Mr. Trabucco to Florida with respect to the claims in this case, the exercise of personal jurisdiction over Mr. Trabucco would "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (quotation marks and citation omitted).

In sum, the Court can and should dismiss the FAC as to Mr. Trabucco because the Court lacks personal jurisdiction over him; the analysis can end here.

**III.    Plaintiffs Also Fail To State A Claim Against Mr. Trabucco.**

Even if Plaintiffs had properly served Mr. Trabucco (they did not) and had alleged facts to establish a prima facie case for exercising personal jurisdiction over Mr. Trabucco (they did not), the claims against Mr. Trabucco would still warrant dismissal for failure to state a claim.

**A.    The Eighteen-Defendant FAC Is A Shotgun Pleading That Scarcely Mentions Mr. Trabucco.**

As a quintessential shotgun complaint, the FAC commits at least two "cardinal sins" that compel dismissal. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 &

n.11 (11th Cir. 2015) (explaining what constitutes a shotgun complaint).

*First*, the FAC "asser[ts] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. The 96-page FAC names eighteen defendants, yet the FAC's four counts lump together all of the "Defendants," make no effort to differentiate among the Defendants and their alleged conduct, and do not plead facts specific to Mr. Trabucco. *See* FAC ¶¶ 249-280. By lumping Mr. Trabucco together with the other "Defendants" and failing to specify the alleged factual basis of the claims against him, the FAC fails to provide Mr. Trabucco with "adequate notice of the claims against [him] and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323; *see also Klayman v. Cable News Network*, 2023 WL 2027843, at *4 (11th Cir. Feb. 16, 2023) (explaining how shotgun pleadings prejudice defendants).

The FAC's failure to plead any factual allegations describing relevant conduct (much less wrongful conduct) by Mr. Trabucco underscores Plaintiffs' shotgun pleading tactic. Mr. Trabucco's name appears in just four background paragraphs, which allege that Mr. Trabucco is a citizen of California (FAC ¶ 45), worked at Alameda, served as its Co-CEO and was an advisor for a time (*id.* ¶¶ 78-80), "fiercely traded crypto" (*id.* ¶ 78), and "helped oversee Alameda's expansion" (*id.* ¶ 80). It should go without saying: Being a citizen of California does not give rise to a claim; working as an employee, co-CEO or advisor does not give rise to a claim; "fiercely" trading crypto (whatever that means) does not give rise to a claim; and helping oversee a (non-defendant) company's expansion does not give rise to a claim. Put differently, none of those allegations suffices to give Mr. Trabucco even the most basic notice as to what he supposedly did wrong.

Controlling precedent confirms the claims against Mr. Trabucco should be dismissed. The FAC mimics the shotgun complaint in *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir.

2001). The Eleventh Circuit condemned the complaint there because it was "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." *Id.* at 1284-85 (remanding with instructions to strike the shotgun complaint). So too here. The FAC involves disparate defendants throughout the country with widely varying alleged involvement with FTX or YBAs—and in Mr. Trabucco's case, no alleged involvement at all with FTX or YBAs.

In short, without even the most basic factual allegations that describe any alleged wrongdoing by Mr. Trabucco, Plaintiffs' scattershot approach of lumping Mr. Trabucco together with seventeen other undifferentiated "Defendants" violates the Eleventh Circuit's prohibition on shotgun complaints. *See, e.g.*, *Weiland*, 792 F.3d at 1322-23; *Mathis v. City of Lakeland*, 2023 WL 2568814, at *3-5 (11th Cir. Mar. 20, 2023).

**Second**, Plaintiffs' incorporation by reference of 248 paragraphs of factual allegations (FAC ¶¶ 249, 257, 267, 273) makes it impossible to discern the alleged factual basis for Plaintiffs' claims against Mr. Trabucco. Many of the incorporated paragraphs amount to "immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. The Eleventh Circuit has affirmed the dismissal of shotgun complaints that similarly incorporate by reference sprawling factual allegations. For example, *Magluta* noted that the incorporation by reference of 146 paragraphs impermissibly caused "any allegations that are material [to be] buried beneath innumerable pages of rambling irrelevancies." 256 F.3d at 1284. Here, the incorporated paragraphs span everything from Plaintiffs' retelling of the purported "Rise and Fall of FTX" (FAC ¶¶ 121-130) to a historical survey of the SEC's purported "Consistent Approach to Cryptocurrency" (FAC ¶¶ 131-159). These sprawling factual allegations—which allege no wrongdoing by Mr. Trabucco—"could not possibly be material to [each] specific count" against him. *Magluta*, 256 F.3d at 1284-85 (affirming the dismissal

of a shotgun complaint); *accord, e.g.*, *Rattner v. 1809 Brickell LP*, 2022 WL 4770402, at *2-5 (S.D. Fla. Aug. 23, 2022) (Moore, J.).

      **B.**    **The FAC Fails To State A Claim Against Mr. Trabucco Under The Florida Securities And Investor Protection Act.**

      Section 517.07(1) of the Florida Securities And Investor Protection Act ("FSIPA") generally prohibits "sell[ing] or offer[ing] to sell" a "security within this state" absent a specified exemption. Critically, alleged civil liability for violating Section 517.07 extends to any "director, officer, partner, or agent *of or for the seller*," and ***only "if the director, officer, partner, or agent has personally participated or aided in making the sale."*** Fla. Stat. § 517.211(1) (emphasis added). In *Dillon v. Axxsys Int'l, Inc.*, 185 F. App'x 823 (11th Cir. 2006), the Eleventh Circuit recognized that that Section 517.211 of the FSIPA imposes two prerequisites to civil liability against an individual defendant: First, the defendant must be an "officer, director, or agent" of the corporation that sold or offered the alleged security and, second, the defendant must have "personally participated" in the sale, i.e., must have had "some personal activity and involvement in the sale." *Id.* at 827-28; *see also Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. 825, 828 (S.D. Fla. 1996) (Moore, J.). Here, the FAC does not even attempt to plead either prerequisite against Mr. Trabucco.

      ***First***, the FAC does not allege that Mr. Trabucco ever served as an "officer, director, or agent" of any corporation that allegedly sold YBAs to any Plaintiff or putative class member. Plaintiffs allege that they bought YBAs or otherwise deposited or sent money to the "FTX Entities"—i.e., FTX Trading and FTX US. FAC at 1. The FAC does not allege that Mr. Trabucco was ever an "officer, director, or agent" of FTX Trading or FTX US. The FAC instead alleges that Mr. Trabucco was an officer of Alameda.[5] FAC ¶¶ 45, 79-80.

---

[5] The FAC does not allege that Alameda sold or offered YBAs to Plaintiffs.

***Second***, the FAC does not allege that Mr. Trabucco personally participated in any sale or offering of an alleged security. Plaintiffs target this shotgun count at all "Defendants," but to the extent that Plaintiffs intend this count to include Mr. Trabucco, the FAC does not allege that he had anything to do with—much less provided "material assistance" to—the FTX Entities' alleged sale or offering of an alleged security. FAC ¶ 256. Nor does the FAC allege that Mr. Trabucco "personally participated" (Fla. Stat. § § 517.211(1)) in the sale or offer of any alleged security. For these reasons, the Court should dismiss Count I against Mr. Trabucco.

### C.      The FAC Fails To State A FDUTPA Claim Against Mr. Trabucco.

Stating a FDUTPA claim requires alleging well-pleaded facts that plausibly show that the defendant committed (1) a deceptive act or unfair practice (2) that caused (3) actual damages. *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097-98 (11th Cir. 2021); *Kais v. Mansiana Ocean Residences, LLC*, 2009 WL 825763, at *1 (S.D. Fla. Mar. 26, 2009). Although some courts have held that a plaintiff need not allege "actual reliance" on a defendant's act or practice, a plaintiff must allege that the act or practice likely would deceive a reasonable consumer.

Plaintiffs have not alleged facts supporting any of these elements. Instead, they again target this shotgun count at all "Defendants;" to the extent they intend that to include Mr. Trabucco, the FAC leaves Mr. Trabucco and the Court to guess, for example, which of the incorporated 248 paragraphs (FAC ¶ 257) describes "unfair and deceptive practices as described herein." FAC ¶ 261. Moreover, aside from the FAC's "formulaic recitation of the [FDUTPA] elements" (*Twombly*, 550 U.S. at 555), the FAC fails to allege any "deceptive act" or "unfair practice" by Mr. Trabucco. At best, the FAC alleges that Mr. Trabucco "helped oversee Alameda's expansion beyond its initial market-neutral, but relatively low-profit business as a market maker for low-volume cryptocurrencies into riskier trading strategies." FAC ¶ 80. But the FAC alleges nothing else about Mr. Trabucco's alleged involvement in this

16

"expansion" into the alleged "riskier trading strategies," much less how *Alameda's* expansion or trading strategies allegedly deceived putative class members who allegedly bought YBAs from *FTX.* The Court should therefore dismiss Count II against Mr. Trabucco.

> **D.      The FAC Fails To State A Claim Against Mr. Trabucco For Civil Conspiracy.**

To start, Florida law "does not recognize civil conspiracy as a freestanding tort." *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1136 (Fla. 3d DCA 2018); *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 764 F.3d 1327, 1339 (11th Cir. 2014). As a result, stating a conspiracy claim requires alleging an agreement to commit an "independent wrong or tort" (among other elements). *SFM Holdings*, 764 F.3d at 1339. Here, Count III attempts to plead a claim for conspiracy to commit fraud by alluding in conclusory terms to "Defendants' [alleged] conspiracy with the FTX Entities to commit fraud." FAC ¶ 272; *accord, e.g.,* FAC ¶ 269 (alleging the conclusion that the "FTX Entities entered into one or more agreements with Defendants with the purpose of making these misrepresentations and/or omissions").

To state a claim for civil conspiracy, Plaintiffs must allege facts that show (1) an agreement between two or more parties (2) to commit a tort or other unlawful act, (3) an overt act in furtherance of the conspiracy, and (4) damages resulting from the alleged conspiracy. *Tippens v. Round Island Plantation L.L.C.*, 2009 WL 2365347, at *4 (S.D. Fla. Jul. 31, 2009) (Moore, J.) (citing *UTC Indus., Inc. v. Pres. Fin. Corp.*, 976 So. 2d 92, 94 (Fla. 3d DCA 2008)).

Following the Eleventh Circuit's instruction, this Court has recognized that, where (as here) the "conspiracy claim alleges that two or more parties agreed to commit fraud, *the plaintiff must [] plead this act with specificity*" under Rule 9(b)'s particularity requirement. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043,1065 (11th Cir. 2007) (affirming dismissal of a conspiracy claim partly because it "fail[ed] to comport with the standards of Rule (b)") (emphasis added); *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1213 (11th Cir. 2018) (same). For example, in *Tippens*, this Court dismissed a claim of

conspiracy to commit fraud partly because the complaint did "not allege at all, let alone with particularity, that [each defendant] ever joined in a conspiracy, or had knowledge of a conspiracy." *Tippens*, 2009 WL 2365347, at *4-5.

Again, the FAC does not allege any facts, much less particularized facts, sufficient to meet any of the elements described above. The FAC makes no allegations at all that Mr. Trabucco entered any agreement whatsoever, much less an agreement to commit fraud. As discussed throughout this Motion, the FAC never even mentions Mr. Trabucco's name apart from background allegations. *See* FAC ¶¶ 45, 78-80.

Instead of well-pleaded facts that meet Rule 9(b)'s particularity requirement, Plaintiffs resort to conclusory allegations and shotgun tactics that conflate all eighteen Defendants. For example, paragraph 269 alleges in conclusory terms that "the FTX Entities entered into one or more agreements with Defendants with the purpose of making these misrepresentations and/or omissions" (FAC ¶ 269), but no factual allegations show, for example, the "time, place, and substance" of any alleged agreement between Mr. Trabucco and anyone else (*United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1310-11 (11th Cir. 2002) (quotation marks and ciatation omitted). Likewise, paragraph 271 alleges in part that "Defendants had knowledge of such fraud and/or wrongdoing, because of their experience and relationship with the FTX Entities, as described above and as such, knew that the representations made to Plaintiffs were deceitful and fraudulent." FAC ¶ 271. Yet no factual allegations show any agreement between Mr. Trabucco and the "FTX Entities" or any interaction that would suggest Mr. Trabucco's knowledge of these allegedly "fraudulent" representations. Further, the FAC does not identify (much less identify with particularity) any "representations" that Mr. Trabucco supposedly made to any plaintiff about the YBAs (or anything else). Finally, the allegation that "Defendants' conspiracy with the FTX Entities to commit fraud caused damages to Plaintiffs" (FAC ¶ 272) is a paradigmatic "formulaic recitation of the elements of a cause of

action" that cannot help Plaintiffs state a claim, especially under Rule 9(b). *Twombly*, 550 U.S. at 555. In sum, Count III should be dismissed.

   **E.     The FAC's Declaratory-Judgment Claim Should Be Dismissed As Duplicative.**

   This Court and others in this District consistently exercise their discretion to dismiss declaratory-judgment claims where, as here, the "claim for a declaratory judgment is superfluous because Plaintiffs['] other claims will resolve all the disputed issues before this Court."[6] *Gentry v. Harborage Cottages-Stuart, LLLP*, 2008 WL 1803637, at *4 (S.D. Fla. Apr. 21, 2008) (Moore, J.); *Taylor v. Greene*, 2010 WL 5248502, at *3 (S.D. Fla. Dec. 16, 2010) (dismissing a declaratory-judgment claim as "entirely duplicative" and noting that success on the substantive claims would yield the same relief sought by the declaratory-judgment claim).

   Here, Plaintiffs seek a declaration that the "YBAs were securities required to be registered with the SEC and state regulatory authorities, that the Deceptive FTX Platform did not work as represented, and Defendants were paid exorbitant sums of money to peddle FTX to the nation." FAC ¶ 280. Although Plaintiffs once again lump all "Defendants" together for this count, they cannot possibly intend to assert this count against Mr. Trabucco. After all, the FAC makes no allegations that he had any involvement with the YBAs or that he was paid to "peddle FTX to the nation."

   To the extent Plaintiffs do intend to seek relief from Mr. Trabucco on Count IV, the count is duplicative of the FAC's other claims. If this Court ultimately reaches the merits, the resolution of the three substantive claims in Counts I through III will answer the exact same questions as the declaratory-judgment claim. For instance, resolving Count I on the merits

---

[6] Though the FAC alleges a claim under the Florida Declaratory Judgment Act, this Court has recognized that the federal Declaratory Judgment Act (28 U.S.C. § 2201) applies in federal court because the "Florida Declaratory Judgment Act is procedural as opposed to substantive." *Mama Jo's Inc. v. Sparta Ins. Co.*, 2018 WL 3412926, at *2 (S.D. Fla. Feb. 9, 2018) (Moore, J.) (citing *Coccaro v. Geico Gen. Ins. Co*, 648 F. App'x 876, 881 (11th Cir. 2016)).

likely would require evaluating whether the "YBAs were securities required to be registered" (FAC ¶¶ 251-54) or whether the "YBAs were sold illegally." *Compare* FAC ¶¶ 251-56, *with* FAC ¶¶ 279-80 (alleging the same legal theory). For all of these reasons, the Court should dismiss Count IV as to Mr. Trabucco.

## CONCLUSION

For the foregoing reasons, Mr. Trabucco respectfully submits that the FAC and all claims against him should be dismissed.

## STATEMENT OF INTERESTS SEPARATE FROM CO-DEFENDANTS

Mindful of the Court's November 16, 2022 order (ECF No. 5) requiring co-parties that file separate motions to "explain the conflicts in their separate motions," Mr. Trabucco respectfully submits that this separate Motion to dismiss the FAC's claims against him is warranted for two reasons.

First, the FAC's claims and allegations against Mr. Trabucco differ materially and fundamentally from the claims and allegations against the Celebrity Defendants and the FTX Officer Defendants (e.g., Sam Bankman-Fried, Gary Wang, and Nishad Singh). The gravamen of the FAC's claims concerning the Celebrity Defendants is that they allegedly promoted purportedly unregistered securities. By contrast, the FAC makes no such allegations concerning Mr. Trabucco. The FTX Officer Defendants were officers of FTX, and multiple of those individuals have been criminally charged or pled guilty to charges concerning their FTX employment. By contrast, Mr. Trabucco was not an officer, director, or employee of FTX, and he has not been criminally charged or pled guilty to any crime.

Second, the specific factual circumstances of Plaintiffs' failure to properly effect service of the FAC on Mr. Trabucco, and the reasons that this Court lacks personal jurisdiction over Mr. Trabucco, are each grounds to dismiss the FAC that are unique to Mr. Trabucco and differ from the specific grounds on which the other Defendants may seek dismissal of the FAC.

Respectfully submitted on April 14, 2023.

*/s/ Jonathan S. Klein*
Jonathan S. Klein
Florida Bar No. 125254
MAYER BROWN LLP
1999 K. Street NW
Washington, DC 20006
Phone: (202) 263-3327
JKlein@mayerbrown.com

and

*/s/ Glenn K. Vanzura*
Glenn K. Vanzura*
Andrew J. Demko*
Jason D. Linder*
Joseph J. Vescera*
MAYER BROWN LLP
333 S. Grand Avenue, 47th Floor
Los Angeles, CA 90071
Phone: (213) 229-9500
GVanzura@mayerbrown.com
ADemko@mayerbrown.com
JLinder@mayerbrown.com
JVescera@mayerbrown.com

*Counsel for Specially Appearing Defendant Sam Trabucco*

\* = *pro hac vice* motion pending

### CERTIFICATE OF SERVICE

I certify that I filed this Motion on April 14, 2023, through CM/ECF, which automatically and electronically delivered notice of filing to counsel of record for all parties that have appeared.

*/s/ Jonathan S. Klein*