**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:22-cv-23753-KMM**

EDWIN GARRISON, *et al.*, on behalf of
Themselves and all others similarly situated,

      Plaintiffs,

v.

SAM BANKMAN-FRIED, *et al.*,

      Defendants.

_____/

**PLAINTIFFS' EXPEDITED MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL
DISCOVERY, AND TO AMEND THEIR COMPLAINT WITH ANY FACTS ARISING
FROM SUCH DISCOVERY**

Plaintiffs, pursuant to Local Rule 7.1(d)(2), respectfully move the Court to enter an order

granting Plaintiffs leave to: (1) take brief jurisdictional discovery from Defendants, Stephen Curry,

Larry David, Golden State Warriors, LLC, Shohei Ohtani, and Naomi Osaka (collectively, "<u>FTX

Non-Florida Defendants</u>") prior to a ruling on Defendants' jurisdictional arguments; and (2) to file

their first substantive amendment to the Complaint within twenty (20) days after completing that

brief jurisdictional discovery, so Plaintiffs' may  incorporate any additional facts that support

personal jurisdiction over these FTX Non-Florida Defendants and address arguments raised in all

Defendants' motions to dismiss.

This is the same, exact reasonable discovery that was opposed by defendants in

Undersigned Counsel's related *Voyager Digital* cases, and required to be produced by Chief Judge

Altonaga, Judge Altman, and Magistrate Judge Reid, in various Orders based specifically on

Eleventh Circuit precedent, in the pending related *Voyager Digital* class actions. ***See* Composite**

**Exhibit A.** All FTX Defendants continue to argue and reiterate that ***none*** of these prior Orders by

*this Court* are in "in any manner" relevant to this inquiry, and cannot even be "considered by this Court," but they are in fact based upon extremely analogous facts. For example, Voyager and Mr. Cuban specifically argued the cases against them should be dismissed for a lack of personal jurisdiction, alleging they had "no connection to Florida." However, the plethora of evidence that was obtained in discovery demonstrated that not only was Florida one of the "main" targets for their promotion of Voyager's unregistered securities, but it was also one of the *most* targeted states, and thus tens of thousands of Florida residents, in fact, suffered millions in damages from defendants' offer and sale of these unregistered securities. Here, there is no dispute that FTX (unlike Voyager) conducted its activities from its headquarters here in Miami, Florida, and there can be no dispute that these Defendants' activities were certainly not confined to some limited geographic area.

All 18 FTX Defendants have, as of today, now definitively informed Plaintiffs that: (1) they have unilaterally decided not to respond to *any* discovery that Plaintiffs would serve following the initial Scheduling Conference, pending the Court's ruling on their Motions to Dismiss (jurisdictional and/or merits) (while Judge Altman denied a very similar Motion to Stay All Discovery in the related Voyager litigation, *See* Comp. Ex. **A**); and (2) they request the Court rely upon their newly filed, Sworn FTX Defendant Declarations, where they make new arguments to support an alleged lack of personal jurisdiction (such as they were not just "physically present" in Florida), but will not allow Plaintiffs to test *any* such arguments, as was specifically ordered in the Voyager cases also pending before this Court.

Plaintiffs diligently worked to confer with Defendants on these issues immediately after they filed their motions, but Defendants as a group were only available for a meet and confer on April 24, 2023, and a follow-up today, April 26, 2023, before they made clear this issue required

Court intervention. Plaintiffs' responses to the pending Motions to Dismiss are currently due Monday, May 15, 2023; therefore, absent an expedited ruling before that date, this matter will likely not be fully briefed and decided under the rules until after that current deadline.

## I.      **BACKGROUND**

This Court has acknowledged that all of these related FTX cases involve a main question of whether FTX's offerings are securities that need to be registered by the SEC. *See Norris, et al. v. Brady, et al.*, No. 1:23-cv-20439-KMM ("*Norris*"), ECF Nos. 43, 45. If the Court decides that question in the affirmative, the only remaining question will be whether these FTX Defendants "aided and abetted" in the offer and sale of such unregistered securities under Florida law.

The FTX Non-Florida Defendants moved on Friday, April 14, 2023, to dismiss the complaint for lack of personal jurisdiction. ECF No. 139. Relying on newly filed declarations of Defendants Stephen Curry, Larry David, and Shohei Ohtani, these FTX Defendants argue that the entire case against them should be dismissed, because this Court lacks specific jurisdiction over them.[1] But the declarations contain only general assertions regarding where the declarants live and where they negotiated and signed their individual contracts. As demonstrated by the FTX Contracts produced in *Norris* by Brady, Ortiz, and O'Leary in support of their opposition to the motion to remand, these contracts are all varied in their requirements, with some requiring FTX Brand Ambassadors to create and publish numerous "social media posts," autograph a certain number of

---

[1] Defendants advance these arguments even in the face of allegations that, for instance, Defendant Osaka **specifically attended matches in Miami wearing her FTX kit as part of the promotional activities for which she was paid by FTX,** [ECF No. 16 ¶ 227], or that Defendant Golden State Warriors promoted the FTX Platform and its unregistered offerings through branding FTX as the "Official Crypto Platform and NFT Marketplace of the **Golden State Warriors**," as a result of FTX being their "first international rights partner," meaning they jointly advertised together on an international basis, and the Golden State Warriors dropped NFTs on the FTX Platform and promoted FTX throughout their G League and eSports teams, also internationally. ECF No. 16 ¶¶ 222–223 (emphasis in original).

items per year, launch NFTs across the country through FTX, conduct virtual meetings and lunches, host FTX charity events, etc.

While Defendants assert that certain information must be filed under seal (and thus Plaintiffs will not be attaching them hereto or providing specifics), the few materials which were provided in the related *Norris* action were also produced in redacted form, some with complete paragraphs redacted (without any table or index to provide context) as well as all of the details regarding their compensation.  All of this information was compelled by this Court in the related Voyager cases. *See* Comp. Ex. A. Plaintiffs have requested, but have been denied, any fully unredacted copies of these relevant materials. Further, Defendants attempt to handicap Plaintiffs in their efforts to address these specific questions. For example, Mr. David alludes in his declaration to an "FTX Restricted Stock Purchase Agreement," which he references generally, but refuses to produce in this litigation. *See* ECF No. 139-2, at n.1.

Some of these FTX Contracts specifically require the Defendants to collaborate with the FTX advertising company on these scripts (*i.e.,* such as the fraudulent FTX "I am All In" Campaign), via phone and emails, and preclude these celebrities from promoting any FTX competitors, in any manner. At a minimum, Defendants' declarations (just like those provided in Voyager) inject issues that cannot be resolved by the Court, or adequately addressed by Plaintiffs, absent some limited jurisdictional discovery and supplemental briefing and/or amended pleadings before the Court rules on Defendants' jurisdictional arguments.

Plaintiffs have been attempting for weeks to confer with Defendants on discovery. In response, Defendants have largely either ignored the requests or have indicated that they all need "proposed dates and times a week in advance (at minimum)" before they can schedule any time to

confer with Plaintiffs.[2] After reviewing Defendants' Motions to Dismiss, Plaintiffs requested a meet and confer to discuss discovery in connection with the motions to dismiss. Plaintiffs also sent proposed jurisdictional discovery (requests for production and deposition notices) to Defendants to demonstrate how narrow the discovery sought was and to expedite the meet and confer process. *See* **Composite Exhibit B** (proposed jurisdictional discovery requests). After two meet and confer sessions, Defendants have now made it clear they will oppose Plaintiffs' request for *any* jurisdictional discovery (no matter how narrow) and instead have sought to stay all discovery. Defendants take this position despite the fact that in two related cases against Voyager Digital and the celebrities alleged to have promoted the offer and sale of unregistered securities, Judge Altonaga, Judge Altman, and Magistrate Judge Reid all granted leave and allowed discovery on personal jurisdiction to proceed based on very similar declarations filed by defendants in support of their motions to dismiss for lack of personal jurisdiction, raising many of the same arguments as Defendants here. *See* Comp. Ex. A.

Notably, Plaintiffs' current Complaint has not gone through any ***substantive*** amendment, and certainly not one after the filing of a Motion to Dismiss or after any discovery has been produced, in that the amended complaint was filed December 16, 2023, to effect the consolidation of the *Garrison* and *Podalsky* actions in accordance with this Court's Order. Defendant O'Neal, the last of the 18 Defendants was finally personally served April 16, 2023—10 days ago, within the deadline to do so set by this Court. No scheduling conference has yet been held, nor is there a case scheduling order. Indeed, the Court set a deadline of May 8, 2023, for the Parties to file a joint

---

[2] Plaintiffs can provide the correspondence should the Court deem it necessary.

*CASE NO. 1:22-cv-23753-KMM*

scheduling report after holding a scheduling conference once Defendant O'Neal was finally located and personally served.[3]

In the *Voyager Digital* cases, this Court denied defendants' motion to stay all discovery, in part, because there was no showing, by declaration nor any evidence, that such requested discovery was unduly burdensome. *See* Comp. Ex. A. In fact, all of that discovery was already taken in those cases and is now completed. Certainly, none of these 18 FTX Defendants have made *any* showing of "undue burden," ***in fact,*** they argue just the opposite, that very little responsive discovery (if any) should exist, conceding there is no burden.

Plaintiffs respectfully ask the Court at this stage for leave to conduct limited jurisdictional discovery, and to afford a very brief period (20 days) following that discovery to allow them to file their first amended complaint with substantive amendments,  especially because "Courts routinely allow such amendments to cure pleading deficiencies in service of the general principle that "decisions on the merits are not to be avoided on the basis of 'mere technicalities.'" *Castros v. Signal Fin. Co. LLC*, 1:17-CV-21870-KMM, 2018 WL 1137099, at *1 (S.D. Fla. Feb. 4, 2018) (Moore, C.J.) (collecting cases).[4]

---

[3] The Parties have agreed to hold the Joint Conference this Friday, April 28, 2023.

[4] Granting Plaintiffs' request would comport with the "policy of the federal rules []to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading," particularly where the proposed amendment would not violate any scheduling order in place and there is no "substantial reason" to deny the amendment, which "could include 'undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment[,]'" none of which would apply since Plaintiffs would be providing their first substantive amendment to the complaint after, at a minimum, taking narrow discovery to address the jurisdictional arguments raised by some of the Defendants. *Castros*, 2018 WL 1137099, at *1 (citations omitted).

*CASE NO. 1:22-cv-23753-KMM*

## II.     LEGAL ARGUMENT

Florida's long-arm statute provides for both general and specific personal jurisdiction. The Court has general personal jurisdiction over a defendant who has been "engaged in substantial and not isolated activity within this state ... whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). Specific jurisdiction exists for claims arising out of certain discrete acts of a defendant that occur in Florida, including "[c]omitting a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2) (2022).

In their complaint, Plaintiffs have invoked both ***general*** and ***specific*** jurisdiction as the basis for personal jurisdiction over each of the FTX Defendants under the long arm statute by alleging:

> This Court has personal jurisdiction against Defendants because they conduct substantial and not isolated business in Florida, and/or have otherwise intentionally availed themselves of the Florida consumer market through the promotion, marketing, and sale of FTX's YBAs in Florida, which constitutes committing a tortious act within the state of Florida. Defendants have also marketed and participated and/or assisted in the sale of FTX's unregistered securities to consumers in Florida. Further, Defendants have engaged in a conspiracy in which some of the co-conspirators—including some who are Defendants in this action—committed overt acts in furtherance of the conspiracy in the State of Florida. This purposeful availment renders the exercise of jurisdiction by this Court over Defendants permissible under traditional notions of fair play and substantial justice.

[ECF No. 16, at ¶ 50]. The Complaint also alleges that "FTX organized and emanated its fraudulent plan from its worldwide headquarters located here in Miami, Florida[,]" [ECF No. 16, at ¶ 8], that FTX promoted the sale of unregistered securities in Florida by using celebrity endorsers, including the Defendants, [ECF No. 16, at ¶ 16], and that FTX paid celebrity endorsers millions of dollars to use the positive reputation associated with specific celebrities to convince consumers that FTX was a safe place to buy and sell cryptocurrency. [ECF No. 16, at ¶¶ 193, 194].

CASE NO. 1:22-cv-23753-KMM

None of the Defendants deny any of the Complaint's material allegations that FTX marketed its products to investors in, and from Florida through the use of paid celebrity endorsements (many millions of dollars), or that FTX paid Defendants many millions of dollars to promote FTX's YBA's to millions of investors worldwide, including in Florida. Instead, the Defendants' jurisdictional declarations—exactly like the ones provided by Messrs. Cuban and Ehrlich in the Voyager cases—contain only general assertions regarding where the Defendants live and where they physically negotiated and signed their individual contracts with FTX.

More importantly, none of the FTX Non-Florida Defendants challenging jurisdiction ***have even attached copies of their FTX Agreements*** to which they repeatedly allude in their respective newly sworn declarations.[5]

Further, for purposes of specific jurisdiction under Florida's long arm statute, the issue is whether Defendants' tortious acts *caused injury* in Florida. *See Louis Vuitton Malleties, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013) ("[W]e conclude that under Florida law where Mosseri created the websites and posted the alleged infringing material does not matter. For purposes of § 48.193(1)(a)(2), the issue is whether Mosseri's tortious acts caused injury in Florida."). Defendants' general denials of contacts with Florida do not address whether these Defendants nevertheless committed a tortious act within Florida by knowingly and purposely promoting FTX's products and services to Florida residents who purchased those products and services based on Defendants' promotional activities, even if conducted outside of Florida. *See Licciardo v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (holding that, under Florida law, a

---

[5] Defendant David moved for leave to file under seal one of the two referenced agreements in his Declaration, [ECF No. 146], which motion is pending, but has to date failed to provide a copy of either to Plaintiffs, redacted or otherwise, despite Plaintiffs' agreement to preliminarily treat the agreement as confidential.

CASE NO. 1:22-cv-23753-KMM

nonresident defendant commits "a tortious act within [Florida]" when he commits an act outside

the state that causes injury within Florida).

The law of this Circuit has long recognized a qualified right to jurisdictional discovery. *See*

*Am. Civil Liberties, Union of Fla. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017). The

qualified right is afforded when (1) the movant timely moves for jurisdictional discovery and (2)

the information the movant seeks, if it exists, would give rise to jurisdiction. *See Posner v. Essex*

*Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999) (distinguishing cases referring to qualified

right of jurisdictional discovery because in *Posner*, plaintiff failed to make discovery requests in

the eight months between the time the complaint was filed and the time it was dismissed) (citing

*Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729-31 (11th Cir. 1982); *Gleneagle Ship Mgmt. Co.*

*v. Leondakos*, 602 So.2d 1282, 1284 (Fla. 1992)); *see also RMS Titanic, Inc. v. Kingsmen Creatives,*

*Ltd.*, 579 F. App'x 779, 790 (11th Cir. 2014) ("Our case law suggests that federal courts should

order limited jurisdictional discovery where the information plaintiff seeks, if it exists, would give

rise to jurisdiction.).

Thus, courts in this circuit routinely permit limited jurisdictional discovery before ruling

on a jurisdictional motion to dismiss. *See Happy Tax Franchising, LLC v. Hill*, Case No. 19-24539-

CIV, 2020 WL 13221241, *1 (S.D. Fla. Jun 24, 2020) (granting leave to conduct jurisdictional

discovery prior to deciding motion to dismiss); *Kilma v. Carnival Corp.*, 2008 WL 4559231, at *1

(S.D. Fla. Oct. 10, 2008) (permitting jurisdictional discovery prior to ruling on a motion to dismiss)

(Moore, J.); *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 2008 WL. 1771857, *2

(S.D. Fla. Apr. 15, 2008) ("[J]urisdictional discovery will be useful to determine the actual extent

of Defendants' contacts with Florida to determine whether this case can be resolved on its merits.

Without factual discovery, the Court would be left to conjecture whether it could exercise

jurisdiction over Defendants."); *Eaton*, 692 F.2d at 729 (holding it was premature to dismiss a claim for lack of jurisdiction where plaintiffs were not given an opportunity to elicit material through discovery to support a determination on jurisdiction); *Blanco Lines*, 632 F.2d at 657 (reversing a dismissal on jurisdictional grounds because "Plaintiff is not required to rely exclusively upon a defendant's affidavit for resolution of the jurisdictional issue" where the dismissal was entered before Plaintiff had an adequate opportunity to take jurisdictional discovery).

Here, limited jurisdictional discovery – consisting of the requests for production of documents and a single deposition of each of the five Defendants who is challenging jurisdiction, *see* Comp. Ex. B – may reveal relevant facts, including, among other things:

1.      Whether Defendants otherwise are engaged in substantial and not isolated activity targeting Florida which may subject them to general jurisdiction in Florida;

2.      Whether other agreements exist between Defendants and FTX under which Defendants agreed to target actions or submit to jurisdiction in Florida;

3.      Whether there are any other relevant contacts between Defendants and FTX that may be sufficient to establish general or specific jurisdiction under the long-arm statute.

4.      Whether Defendants contracted to target their advertising or marketing efforts for FTX's services and products to the state of Florida in a manner that may subject them to specific jurisdiction in Florida.

Plaintiffs should have the opportunity to at least conduct jurisdictional discovery before the Court rules on Defendants' jurisdictional arguments. Plaintiffs' request is timely and appropriate considering Defendants' jurisdictional arguments. *See, e.g., Happy Tax Franchising*, 2020 WL 13221241 at *1 ("The qualified right [to jurisdictional discovery] is afforded when 1)

the movant timely moves for jurisdictional discovery and 2) the information the movant seeks if it exists, would give rise to jurisdiction.").

### III.    <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs very respectfully request that the Court grant this Expedited Motion and enter an order granting leave for Plaintiffs to: (1) conduct limited jurisdictional discovery in the manner described above within forty-five (45) days of the Court's order on this Motion; and (2) file an amended complaint with any additional facts revealed by such additional discovery that establish personal jurisdiction over the Defendants within 20 days after the close of such jurisdictional discovery.  Any of the FTX Defendants can still raise any and all specific objections (undue burden, etc.) to the discovery that is served, which the Court can decide.

### <u>S.D. FLA. L.R. 7.1 CERTIFICATION</u>

Plaintiffs' Counsel certify that they have conferred with Defendants' Counsel on the earliest dates Defendants' Counsel made available, via Zoom videoconference on April 24, 2023, and again on April 26, 2023, in a good faith effort to resolve the issues raised in this Motion, and report that Defendants oppose the requested relief.

*CASE NO. 1:22-cv-23753-KMM*

Dated: April 26, 2023                    Respectfully submitted,

**By:** *<u>/s/ Adam Moskowitz</u>*
Adam M. Moskowitz
Florida Bar No. 984280
adam@moskowitz-law.com
Joseph M. Kaye
Florida Bar No. 117520
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
3250 Mary Street, Suite 202
Coconut Grove, FL 33133
Telephone: (305) 740-1423

**By:** *<u>/s/ David Boies</u>*
David Boies
(*Pro Hac Vice*)
Alex Boies
(*Pro Hac Vice*)
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Phone: (914) 749–8200
dboies@bsfllp.com

**By:** *<u>/s/ Stephen Neal Zack</u>*
Stephen Neal Zack
Florida Bar No. 145215
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., Suite 2800
Miami, FL 33131
Office: 305-539-8400
szack@bsfllp.com

**By:** *<u>/s/Jose M. Ferrer</u>*
Jose Ferrer
Florida Bar No. 173746
Michelle Genet Bernstein
Florida Bar No. 1030736
**MARK MIGDAL HAYDEN LLP**
8 SW 8th Street, Suite 1999
Miami, FL 33130
Office: 305-374-0440
jose@markmigdal.com
michelle@markmigdal.com
eservice@markmigdal.com

*Co-Counsel for Plaintiff and the Class*

12

*CASE NO. 1:22-cv-23753-KMM*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the forgoing was filed on April 26, 2023, via the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

By: *<u>/s/ Adam M. Moskowitz</u>*
ADAM M. MOSKOWITZ